JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Dennis A. Throm, individually and on behalf of all others similarly situated

## DEFENDANTS
GMAC Mortgage, LLC

**(b)** County of Residence of First Listed Plaintiff  Indian River, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Montgomery County, PA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Berger & Montague, P.C., 1622 Locust St., Phila. PA 19103, 215-875-4656

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Section 1601
Brief description of cause:
Violation of Truth-in-Lending Act/Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE  Dalzell
DOCKET NUMBER  2:11-cv-5161

DATE
10/31/2011

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

JS 44 Reverse  (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. **(1)** Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. **(2)** When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. **(3)** This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. **(4)** This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. **(1)** Cases which originate in the United States district courts.

Removed from State Court. **(2)** Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. **(3)** Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. **(4)** Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. **(5)** For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. **(6)** Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. **(7)** Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                          Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| Dennis A. Throm, individually and on behalf of all others similarly situated | ) ) ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| GMAC Mortgage, LLC | ) ) | |
| *Defendant* | ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, PA 19034

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Shanon J. Carson
1622 Locust Street
Philadelphia, PA 19103
(215)-875-4656

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*Michael E. Kunz*
*Clerk of Court*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*     GMAC Mortgage, LLC _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CASE MANAGEMENT TRACK DESIGNATION FORM

———————————————————— :
**DENNIS A. THROM, individually and** :
**on behalf of all others similarly situated,** :     **CIVIL ACTION**
                                             :
           **Plaintiff,**                    :
                                             :
           **v.**                            :     **NO.**
                                             :
**GMAC MORTGAGE, LLC,**                       :
                                             :
           **Defendant.**                    :
———————————————————— :

   In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          (**X**)

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

Date  October 31, 2011  Attorney-at-law: Patrick F. Madden Attorney for: Plaintiff

Telephone: 215.875.3035  FAX Number: 215.875.4064 E-Mail Address: pmadden@bm.net

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)     The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)     In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)     The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)     Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)     Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases  involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA— DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff:  Dennis A. Throm, 138 Kildare Drive, Sebastien, Florida 32958

Address of Defendant:  GMAC Mortgage, LLC,  1100 Virginia Drive, Fort Washington, Pennsylvania 19034

Place of Accident, Incident or Transaction:  GMAC is a limited liability company whose corporate headquarters is in Fort Washington Pennsylvania.  Plaintiff is a citizen and resident of Sebastian, Florida.  The incidents and transactions underlying this action took place in Pennsylvania, Florida, and other and other locations.

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1)                                         Yes __  No **X**_____

Does this case involve multidistrict litigation possibilities?                                                                          Yes **X**  No_____

*RELATED CASE, IF ANY:*
Case Number:        2:11-cv-5161          Judge:      Dalzell      Date Terminated:      N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                                                                    Yes __  No **X**

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?                                                                  Yes  **X**  No____

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                                                       Yes___ No **X**

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                                                                                                                    Yes___ No **X**

CIVIL: (Place X in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. __Indemnity Contract, Marine Contract, and All Other Contracts
2. __FELA
3. __Jones Act-Personal Injury
4. __Antitrust
5. __Patent
6. __Labor-Management Relations
7. __Civil Rights
8. __Habeas Corpus
9. __Securities Act(s) Cases
10. __Social Security Review Cases (Please specify)
11. __**X**__ All other Federal Question Cases

B. *Diversity Jurisdiction Cases*:
1. __ Insurance Contract and Other Contracts
2. __Airplane Personal Injury
3. __Assault, Defamation
4. __Marine Personal Injury
5. __Motor Vehicle Personal Injury
6. __Other Personal Injury
7. __Products Liability
8. __Products Liability— Asbestos
9. __All other Diversity Cases

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,  Patrick F. Madden, counsel of record do hereby certify:

    **X**  Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

    **X**  Relief other than monetary damages is sought.

**DATE:** October 31, 2011          _____          309991_____
                              Attorney-at-Law: Patrick F. Madden          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

**DATE:** October 31, 2011          _____          309991_____
                              Attorney-at-Law: Patrick F. Madden          Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DENNIS A. THROM, individually and on behalf of all others similarly situated, | : : : | Case No.: _____ |
| Plaintiff, | : : : | |
| v. | : : | COMPLAINT - CLASS ACTION |
| GMAC MORTGAGE, LLC, | : : | JURY TRIAL DEMANDED |
| Defendant. | : : : | |

## CLASS ACTION COMPLAINT

Plaintiff Dennis A. Throm ("Plaintiff" or "Mr. Throm"), individually and on behalf of all others similarly situated, brings this class action against GMAC Mortgage, LLC ("Defendant" or "GMAC").  The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

1.      Plaintiff owns a home in Sebastian, Florida.  Plaintiff's parents, who are now deceased, were the original purchasers of the home.  On November 3, 1997, they refinanced their mortgage through Manning Financial Group, Inc.  The resulting mortgage was subsequently assigned to GMAC.

2.      GMAC originates, acquires and/or services loans secured by real property, some of which are located in Special Flood Hazard Areas ("SFHAs").  These loans include original purchase-money mortgages secured by the property, second mortgages, mortgage refinances, and home equity lines of credit ("HELOC").

1

3.      GMAC is engaged in a pattern and practice of forcing owners of properties whose loans are secured by their properties, and are originated or serviced by GMAC, to purchase excessive high-premium flood insurance.  GMAC requires borrowers to purchase flood insurance in excess of that required by federal law or the parties' mortgage contract and, more importantly, in excess of that required to protect GMAC's insurable interest in the collateral. GMAC has the power and exerts that power to force borrowers to pay for the excessive and worthless insurance since GMAC simply can withdraw the amounts from escrow, add the amounts to the loan balance, and ultimately foreclose on the property should the borrower fail to pay the forced premiums.  Plaintiff was victimized by this illegal scheme when GMAC force-placed a $176,000 flood insurance policy on his property that required Plaintiff to pay in excess of $6,000 in annual premiums.  GMAC's entire interest in the property amounted to $55,000 – the amount remaining on Mr. Throm's mortgage.  Unfortunately, these excessive fees forced Plaintiff into foreclosure.

4.      To add insult to injury, as GMAC knew, Plaintiff did not even live in an SFHA and was therefore never required to carry flood insurance.

5.      GMAC's scheme is highly automated.  A typical homeowner's ordeal with GMAC's force-placed flood insurance begins with a form notice from GMAC demanding proof of adequate flood insurance, and continues with form letters asking for more information and explaining GMAC's intention to force-place flood insurance.  When sending these form letters to homeowners, GMAC disregards whether the homeowners have adequate flood insurance coverage.  Even when a homeowner, such as Plaintiff here, sends GMAC information that demonstrates that they have adequate coverage (or that coverage is unnecessary), Defendant does

2

not relent.  The process culminates with GMAC's purchase and forced placement of a high premium flood insurance policy.   These force-placed policies can cost up to ten times as much as insurance policies that borrowers can obtain independently.  Throughout this process, GMAC misrepresents that its requirement that homeowners obtain additional flood insurance at the homeowner's expense is in line with federal laws for homeowners in SFHAs.  In some cases, including that of Plaintiff, the property is not even in a SFHA.

6.    GMAC force-places homeowners into insurance policies brokered through affiliated entities, including SouthWest Business Corporation ("SWBC") and WNC First Insurance Services ("WNC").

7.    SWBC has a specialized business that focuses on lender-placed insurance services and helps GMAC identify which homeowners to target for force-placed insurance.  SWBC claims that its "risk management products, processes, and technology design allows you to maintain the proper balance between growth, customer value, service, and profitability."  SWBC's force-placed programs are specifically designed to provide GMAC (and others) with "growth" and "profitability" because GMAC is able to generate interest on unpaid insurance premiums and fees when homeowners are unable to pay the excessive premiums.

8.    WNC provides similar services to GMAC as SWBC.  WNC provides its services through a highly mechanized system, including what it refers to as its InsTrack system.  Moreover, WNC promises that it will force-place flood insurance without any need for elevation certificates.  As WNC states in describing its force-place flood insurance program that "[n]o elevation certificates are required, eliminating the most difficult requirement in obtaining flood insurance."

3

9.     The premiums GMAC and/or its brokers charged for this insurance were unconscionably and outrageously excessive, far in excess of any amount that could be considered "reasonable." Both the amount of force-place flood insurance coverage and the rate of that coverage are excessive. GMAC inflates the premiums by its unreasonable and unwarranted insistence on having properties insured for up to more than three times GMAC's insurable interest in the property. Even if the amount of coverage were proper, the insurance premiums were still excessively high, by the order of up to ten fold.

10.    The above-described actions constitute GMAC's breach of the mortgage contract between Plaintiff and GMAC, in that GMAC imposed conditions not required by any reasonable construction of the contractual provisions relating to the obligation of Plaintiff to carry insurance on the property in question. Plaintiff's form contract limits the amount of force-place insurance that GMAC can place on the property. GMAC exceeded that limit by requiring flood insurance coverage of $176,000 when its security interest is only $55,000. In addition to a breach of contract, GMAC's actions also constitute a breach of the implied covenant of good faith and fair dealing applicable to contracts. GMAC's actions also constitute conversion and are unconscionable.

11.    This Complaint seeks disgorgement of all funds paid to GMAC by Plaintiff and those similarly situated after GMAC force-placed flood insurance on properties that are already adequately insured under federal law and their mortgage contracts; disgorgement of any and all funds paid to GMAC to modify loans after GMAC's practices forced foreclosure or potential forceclosure; and an injunction prohibiting GMAC from force-placing unnecessary flood insurance policies on properties that already have adequate flood insurance as dictated by federal

4

law.

## PARTIES

12.     Plaintiff Dennis A. Throm ("Plaintiff" or "Mr. Throm") is a resident of Sebastian,
Florida and owns a home there.  The previous owners of the home were Mr. Throm's parents,
Vernon H. Throm and Agnes K. Throm ("Predecessors in Interest").  Subsequent to his mother's
death in October 2008 (his father died in October 2004), Plaintiff took possession and ownership
of the property.

13.     Defendant GMAC Mortgage, LLC ("Defendant" or "GMAC") is a limited
liability company, with its principal place of business in Fort Washington, PA.  GMAC
originates, acquires and/or services mortgage loans including mortgage loans to Florida
homeowners.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because
Plaintiff's claims arise under the federal Truth in Lending Act, 12 U.S.C. § 1601, *et seq*.

15.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant
to 28 U.S.C. § 1367.

16.     Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act,
28 U.S.C. § 1332(d)(2) ("CAFA") because the matter in controversy, on information and belief,
exceeds $5,000,000, exclusive of interest and costs, and this action is a class action in which
members of the Class are residents of a different state than Defendant.

17.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the
acts, events and/or omissions giving rise to this action took place in this District.

5

# FACTUAL BACKGROUND

**A.**     **The National Flood Insurance Program and Regulations**

18.     In the 1994 Amendments to the National Flood Insurance Act of 1968 ("NFIA"),
Congress required lenders to ensure that homeowners had flood insurance for property located in
areas designated by the Federal Emergency Management Agency ("FEMA") as Special Flood
Hazard Areas ("SFHA").  Lenders are required to ensure that properties in SFHAs pledged as
security for loans have flood insurance equal to the *lesser* of:  (1) the maximum insurance
coverage available through the federal National Flood Insurance Program ("NFIP"), which is
$250,000 per unit; (2) the outstanding balance of the loan; or (3) the replacement cost of the unit.

19.     The purpose of the NFIP is to reduce the federal government's burden to provide
disaster relief to flood-prone areas by providing a federal flood insurance scheme.  Payments for
flood losses under the NFIP are the exclusive source of insurance payments, and federal agencies
tasked with implementing the NFIP, most notably FEMA, proscribe minimum and maximum
limits on how much flood insurance a homeowner can have and how much the insurance policy
will pay in the event of a loss.

20.     GMAC requires borrowers to purchase flood insurance in excess of the
outstanding balance on the mortgage when the full replacement value exceeds the mortgage
balance.

21.     When this is the case, in the event of flood loss, GMAC has no interest in the
insurance policy's excess coverage.  The additional insurance on the properties GMAC force-
places is excessive and unnecessary.  There is no good faith basis for a lender to force-place
coverage that exceeds the lender's interest in the property and harms the borrower's ability to

6

pay off the loan.  In some cases, however, the insurance premiums forced by GMAC force the borrower into foreclosure.  In those cases, GMAC modifies the loan to wipe out equity the borrower has in the home.

22.     GMAC misrepresents to its customers that federal law requires GMAC to obtain flood insurance in amounts dictated by GMAC when, in reality, GMAC forces homeowners to purchase flood insurance that the federal government does not require.  GMAC force-places consumers into flood insurance that exceeds GMAC's security interest.  GMAC also force-places consumers, including Plaintiff and Plaintiff's Predecessors in Interest, into flood insurance policies that are not required by federal law because the properties are not even in an SFHA.  As a result, GMAC charges these homeowners exorbitant and excessive insurance premiums that significantly and unfairly add to the homeowners' mortgage payments.

**B.     GMAC Force-Placed Plaintiff, His Predecessors in Interest and the Class Into Unnecessary and Excessive Flood Insurance**

23.     On November 3, 1997, Plaintiff's Predecessors in Interest obtained a mortgage from Manning Financial Group, Inc.  The Predecessors in Interest borrowed $66,000 and conferred a security interest in that amount on their home. The mortgage was subsequently assigned to GMAC.

24.     At the time of closing, Plaintiff's Predecessors in Interest were not required to purchase flood insurance as a condition of closing the loan.  The Predecessors in Interest were, however, required to pay a $29 fee to a third-party company, Transamerica, as a "Flood Certification Fee."  This fee was used to determine whether the property was in a floodplain to ascertain whether the mortgage was subject to the federal flood insurance regulations.

25.     The "Flood Certification Fee," "Hazard Insurance Premium," and "Hazard Insurance Reserves" were all disclosed in the "Federal Truth-In-Lending Disclosure Statement" provided at closing.  Flood insurance was neither required nor disclosed as part of this document.

26.     The "Federal Truth-In-Lending Disclosure Statement" provided a payment schedule that required 359 monthly payments of $513.34 and one payment of $515.41 in November 2027.  Taxes and hazard insurance premiums were also added to the monthly payment, making the total $631.04/month.

27.     In 2002, approximately five years after closing on the loan, Plaintiff's Predecessors in Interest received a notice from GMAC requiring flood insurance.  Plaintiff and/or his Predecessors in Interest received similar notices in subsequent years.

28.     GMAC's notices indicated that if Plaintiff's Predecessors in Interest did not provide proof of flood insurance within a specified time frame, GMAC would automatically enroll them in a flood insurance policy with one of GMAC's affiliates.

29.     GMAC force-placed a policy effective from December 7, 2002 to December 7, 2003 with an earned premium of $864.51 (annually).  Over the next three years, GMAC force-placed flood insurance policies on Plaintiffs' Predecessors in Interest with annual premiums in similar amounts.

30.     However, beginning with the policy year July 1, 2006 to July 1, 2007, the premiums charged by GMAC on the force-placed flood insurance increased significantly, with premiums nearly three times what they had been in the preceeding years as the annual premium skyrocketed to $2,255.37.  The 2007-2008 annual premium rose again by over 30% to $2,976.11. GMAC then doubled the 2008-2009 annual premium, forcing Plaintiff to pay $5,882.18 for his

8

flood insurance policy.  GMAC increased the 2009-2010 annual premium yet again, this time by
5% to $6,159.14.  By 2009, Plaintiff was being charged premiums that increased by over 700%
in the span of just four years.

31.     Not only were the premiums amounts outrageous but the annual premiums were
made even more excessive by GMAC's demand for coverage in excess of the loan balance.  For
example, GMAC force-placed a flood insurance policy with $84,000 in coverage for the July
2007 to July 2008 policy year.  The mortgage balance was substantially below $84,000 during
this time period.  Similarly, GMAC then more than doubled the force-placed policy amount for
the July 2009 renewal to $176,000 in coverage notwithstanding the February 18, 2009 balance of
$55,490.56 on the mortgage.

32.     On information and belief, GMAC, or a wholly owned subsidiary of GMAC or its
holding company, receives a kickback or commission for acting as a putative "broker" for each
force-placed insurance policy.  These kickbacks or commissions constitute at least part of the
reason for the exorbitant cost of the force-placed policies.  This allegation is based on the high
proportion of premium amount per dollar of force-placed insurance coverage as well as similar
practices by other lenders.

33.     On July 5, 2005, GMAC sent a written notice to Plaintiff's Predecessors in
Interest informing them that GMAC would force-place fire insurance on the property.  The
notice makes clear that "the amount of coverage will not be greater than the outstanding
principal balance in [Plaintiff's Predecessors in Interest's] account as of the effective date of the
coverage, *which may be less than the value of your property*." (emphasis added). While GMAC
indicated that the fire insurance policy would not exceed the outstanding principal balance,

9

GMAC showed no such restraint or policy in force-placing flood insurance policies on Plaintiff or Plaintiff's Predecessors in Interest and force-placed flood insurance in an amount that was over three times the outstanding principal balance.

34.     Due to GMAC's outrageous coverage demands and the outrageous premiums associated with that coverage, the monthly mortgage payment skyrocketed to the point that, during the 2009-2010 policy year, GMAC forced Plaintiff to pay a monthly amount for unnecessary flood insurance alone that was almost ***double*** the monthly mortgage payment.

35.     On June 24, 2010, Plaintiff had a surveyor determine that his property was not located in the floodplain.  The surveyor completed a Letter of Map Revision Based on Fill Determination Document (Removal).  The surveyor's determination was not based on any recent changes since the property had not been in the floodplain for some time.  On information and belief, flood insurance was not required at closing of the loan because as far back as November 3, 1997, the property was not in a floodplain.

36.     Plaintiff requested a full refund of all premiums paid but GMAC denied his request.  GMAC informed Plaintiff that only premiums that covered dates after the date of the Letter of Map Revision Based on Fill Determination Document (Removal) could be refunded.

37.     In May 2010, GMAC foreclosed on the loan due to Plaintiff's inability to pay both the loan payment and the excessive, force-placed flood insurance premiums.

38.     In August 2010, Plaintiff entered into a loan modification agreement with GMAC to remove the loan from foreclosure.  Pursuant to the modification, Plaintiff owed as of August 2010, $77,395.53.  Thus, the modification not only wiped out $11,000 in equity that Plaintiff and his Predecessors in Interest had in their property, it added more than $11,000 in new debt not

previously subject to the mortgage.  Thus, GMAC used its unreasonable and excessive force-placed flood insurance to extract an additional $22,000 in debt from Plaintiff.

39.     Plaintiff's situation is not unique since GMAC employs a highly mechanized program to force homeowners to pay whatever egregious amount GMAC (and its affiliates) determines for force-placed flood insurance.  GMAC has enforced the same policies and taken similar actions against homeowners across the country.  These policies and practices have even gone so far, as they did here, to result in GMAC's foreclosing on the loans.  Overall, GMAC's practices have impaired Plaintiff's and Class members' ability to repay their loans and build equity in their homes, but have lined the pockets of GMAC and its affiliates.

40.     Plaintiff has provided GMAC ample opportunity and a reasonable period to take corrective action.

41.     Plaintiff's property was force-placed with flood insurance through two of GMAC's affiliates, SWBC and WNC, who on information and belief, compensates GMAC in connection therewith.

42.     Plaintiff was charged for these unnecessary flood insurance premiums and paid an inflated and excessive rate for the unnecessary premiums.

43.     GMAC, through its uniform and highly mechanized practices has made similar (and/or identical) misstatements to and took similar unwarranted positions and actions to force tens or hundreds of thousands of Class members to force-place excessive flood insurance policies on their properties.

C.     **GMAC's Practices**

44.     GMAC ties insurance products in with its mortgage loan and home equity

11

financing activities.

45.     GMAC enforces this tie in a highly mechanized and arbitrary fashion without regard to whether a particular borrower needs flood insurance in the amounts dictated by GMAC and without regard to whether GMAC is forcing insurance over and above any interest GMAC has in the property.

46.     GMAC makes its decision to force-place flood insurance together with its affiliates, including, without limitation, SWBC and WNC.

47.     Flood Insurance Rate Maps ("FIRMs") show aerial views of the SFHAs but do not show whether a specific property is actually located in the floodplain and subject to the federal flood insurance regulations.

48.     After determining through its mechanized process, along with its affiliates, that GMAC will require flood insurance, GMAC then regularly requires borrowers to purchase flood insurance in excess of what is necessary to meet the requirements of federal law or to protect its mortgage interest, in violation of GMAC's mortgage contracts.

49.     GMAC and its affiliates charge insurance premiums that can be up to ten times the cost of obtaining the same insurance independently.  Additionally, by demanding excess coverage amounts that far exceed federal guidelines and GMAC's interests, GMAC inflates the premiums, thereby increasing GMAC's and its affiliates profits from this practice.  The premiums increase the monthly mortgage payments required of borrowers due to GMAC's practices and increases GMAC's profitability.

50.     On information and belief, GMAC or a subsidiary of itself or its parent company, receives a kickback or commission for the purchase of each force-placed flood insurance policy

12

as "broker" for the policy, contributing to the excessive costs of the insurance.

51.     GMAC sends out generic written notices to borrowers, including Plaintiff and/or Plaintiff's Predecessors in Interest, stating that the borrower must obtain insurance coverage in amounts dictated by GMAC.  The amount of coverage that GMAC dictates and requires of borrowers exceeds that required by federal law.  It also exceeds what is necessary to protect GMAC's interest in the collateral pledged as security.

52.     GMAC breached its contract with Plaintiff and all similarly situated borrowers whose loans GMAC services by imposing coverage requirements beyond that necessary to protect its insurable interest in the property.

53.     To the extent that GMAC sought to impose coverage requirements under the guise that federal law requires the insurance when, in fact, federal law does not requires such coverage at all or requires coverage in a lesser amount, GMAC breached its contracts with Class members, misrepresented federal law and violated the law.

54.     GMAC ensures that its borrowers will pay the exorbitant force-placed insurance premiums by tacking the payments onto their borrowers' principal balances and/or withdrawing the funds directly from the borrowers' escrow accounts.  These actions force borrowers to make the payments or GMAC will report the GMAC-manufactured delinquencies to the consumer credit reporting agencies and potentially even foreclose on their properties.

55.     GMAC engages in the above-described practices in order to reap improper financial gain from their customers.

56.     By tacking the force-placed flood insurance premiums onto homeowners' mortgage or home equity line of credit balances and withdrawing its affiliates' insurance

premiums directly from mortgage borrowers' escrow accounts, GMAC also derives interest income on the increased loan balance, and fee income, where applicable.   GMAC can ultimately even force the loan into foreclosure and wipe out any equity that the borrower had in their home and sometimes generate additional revenue on the loan for GMAC in loan modifications.

57.     GMAC also has a mutually beneficial financial relationship with affiliate insurance entities including SWBC and WNC.

58.     GMAC forces homeowners to obtain unnecessary insurance policies with excessively high premiums that benefit only GMAC and its affiliates including, without limitation, SWBC and WNC.  GMAC and/or its affiliates benefit from, *inter alia,* increased premium and commission revenue, increased interest payments and other fees from borrowers on these forced debts that GMAC creates for the customer.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action individually and on behalf of all others similarly situated and asks the Court to certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

60.     This action satisfies Rule 23's requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority.

61.     Plaintiff's allegations are brough on behalf of a proposed nationwide class defined as:

> All persons with loans financed or serviced by GMAC who GMAC provided
> force-placed flood insurance which exceeded any of the following:  (1)  $250,000;
> (2) the replacement cost value of the property pledged as security for the loan; or
> (3) the total outstanding loan balance (if a traditional loan) or maximum line of
> credit (if a home equity line of credit) (the "Class").

14

62.     The Class is numerous, and is composed of hundreds or thousands of mortgage or HELOC borrowers whose home financing was originated and/or serviced through GMAC, the joinder of which in one action would be impracticable.  The disposition of the claims of the Class through this class action will benefit the parties and the Court.  The identities of individual Class members are readily ascertainable through GMAC's records.

63.     Plaintiff's claims are typical of the claims of the Class, in that Plaintiff, like all Class members, was forced into paying for unnecessary and excessive flood insurance.  Plaintiff and the Class suffered damages in the form of costs associated with the purchase and maintainence of these high-premium policies.

64.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained experienced counsel with the necessary expertise and resources to prosecute this action. Plaintiff and his counsel do not forsee any circumstances where the interests of Plaintiff would be adverse to those of the Class.

65.     Common questions of law and fact exist as to all Class members which predominate over questions affecting solely individual Class members, including, without limitation:

> (a)     whether GMAC has a policy and practice of misrepresenting to its customers that federal law requires additional flood insurance on mortgages or HELOCs for which such additional flood insurance is not required by law;

> (b)     whether GMAC's standard flood insurance notice letters are false,

15

misleading and/or deceptive;

(c)     whether GMAC breached its mortgage agreements with customers by

demanding and force-placing unauthorized amounts of flood insurance or

amounts that were not provided for in the mortgage agreements;

(d)     whether GMAC's agreements comply with all mandated consumer

disclosures under TILA;

(e)     whether GMAC's agreements are void in their entirety under TILA; and

(f)     the proper measure of damages.

66.     All Class members have suffered damages as a result of a "common wrong" on

the part of GMAC.  Damages are easily ascertainable by reference to GMAC's own records.

67.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.  It would be economically impractical for Plaintiff and Class

members to pursue individual actions against GMAC as the costs of prosecution would likely

surpass their individual damages.  GMAC continues to engage in the unlawful, unfair and

unconscionable conduct that is the subject of this Complaint.  Class treatment of Plaintiff's

claims will permit Plaintiff and the Class to vindicate their rights against GMAC, and conserve

the resources of the Court and the Parties.  Class treatment would also avoid the possibility of

inconsistent outcomes that could result from a multitude of individual actions in varying

jurisdictions nationwide.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

68.     Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

69.     Plaintiff's Predecessors in Interest entered into a mortgage contract with Manning Financial Group, Inc., which transferred its interest to GMAC causing GMAC to assume all rights and responsibilities of Manning Financial Group, Inc. under that contract.

70.     The contract provides, in pertinent part, that:

5.  **Hazard or Property insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, ***including floods or flooding***, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires. . .  If Borrower fails to maintain coverage described above, Lender may, at Lender's option, ***obtain coverage to protect Lender's rights in the Property*** . . .

(emphasis added).

71.     The contract is a form contract obtained by the lender from the Fannie Mae and/or Freddie Mac websites.

72.     GMAC breached its contract with Plaintiff and/or Predecessors in Interest by requiring the purchase of excessive flood insurance that was not required under the contract or federal law.

73.     The coverage amount in the force-placed policy exceeded the minimum amount required under federal law and exceeded GMAC's security interest in the property.

74.     Additionally, the law implies into every contract an obligation of good faith and fair dealing, the purpose of which is to prevent one party's conduct under the contract from

impeding the other party's performance of that contract.

75.     GMAC's actions constitute a breach of its duty of good faith and fair dealing in that, to the extent that GMAC had any discretion under the contract, it exercised that authority in bad faith by imposing unnecessary insurance on Plaintiff's mortgage without regard for the fact that GMAC's insurable interest was protected by a lower amount of coverage.  As a result, GMAC wrongfully withdrew money from Plaintiff's and/or his Predecessors in Interest's mortgage escrow account, and forced these wrongfully increased payments with the implicit threat of negative credit reporting, thereby impeding their ability to continue meeting their obligations according to the terms of the contract.

76.     On information and belief, GMAC has replicated these actions with respect to all members of the Class as part of a scheme to wrongfully increase income to it and its affiliates.

77.     Plaintiff and the Class are entitled to compensatory damages resulting from GMAC's wrongful breach of contract and in violation of GMAC's obligation of good faith and fair dealing in performing under the contracts at issue.

**<u>COUNT II</u>**
**Violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.***

78.     Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

79.     Congress' objective in enacting the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), was to ensure that the true cost of goods and services be fully and completely disclosed to the consumer in writing prior to the consumer's purchase and agreement to those terms.

80.     Residential mortgage loan agreements and line of credit agreements are subject to

18

the disclosure requirements of TILA and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

81.    GMAC is a "creditor" as defined by TILA

82.    As a creditor, TILA requires GMAC to timely disclose all finance charges, other charges, and third-party charges that may be imposed in connection with a mortgage loan or line of credit.

83.    TILA thus requires GMAC to make these disclosures clearly and conspicuously.

84.    TILA further requires GMAC to accurately and fully disclose the terms of the legal obligation between the parties.

85.    GMAC violated TILA by, *inter alia*:  (a) adversely changing the terms of mortgage loans or credit lines after origination without consent and demanding more insurance than previously required in amounts greater than necessary to protect its interest in the property; and (b) failing to provide proper notice, after origination, that GMAC was amending the terms of loans or credit lines as described in the relevant mortgage documents.

86.    The TILA violations set forth above occurred within one year of the commencement of this action.  To the extent that the violations described above occurred earlier, Plaintiff did not discover and did not have a reasonable opportunity to discover GMAC's violations until less than one year before this action commenced.  Prior to this time, Plaintiff had no reason or opportunity to complain about GMAC's TILA violations because it was not yet apparent that GMAC's disclosures were incomplete, inaccurate, and misleading.

87.    Plaintiff's TILA claim is timely.  The statute of limitations on Plaintiff's TILA claim did not begin to run and/or was equitably tolled until such time that he had a reasonable

19

opportunity to discover GMAC's TILA violations and complain about such violations.  It would be manifestly unjust and inconsistent with the purposes of the TILA to apply and enforce an earlier accrual date for Plaintiff's TILA claim.

88.     GMAC systematically and pervasively engaged in similar violations of TILA to the detriment of other Class members.

89.     Plaintiff and the Class have been injured and have suffered monetary losses as a result of GMAC's violations of TILA.

90.     As a result of GMAC's violations, Plaintiff and the Class are entitled to recover actual damages and a penalty of $500,000.00 or 1% of Defendant's net worth, as provided by 15 U.S.C. § 1640(a)(l)-(2).

91.     Plaintiff and the Class are also entitled to recover attorneys' fees and costs to be paid by GMAC, as provided by 15 U.S.C. § 1640(a)(3).

## COUNT III
**Unconscionability**

92.     Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

93.     GMAC's conduct described herein is substantively and procedurally unconscionable in the following respects, among others:

a)     GMAC did not disclose its insurance requirements at the time of closing and, in fact, Plaintiff's Predecessors in Interest were not required to purchase flood insurance at the time of closing, a supposed prerequisite for obtaining GMAC financing in the first place;

b)     GMAC force-placed Plaintiff and the Class into its affiliates' flood insurance policies for amounts in excess of GMAC's security interest in the properties;

20

      c)     GMAC's affiliates charged premiums up to ten times as costly as that a homeowner could purchase from an independent insurance company;

      d)     GMAC withdrew these premiums from customers' escrow accounts or added them to customers' HELOC credit line balances such that they became a part of the customers' loan obligation, which made them subject to negative credit reporting;

      e)     Nowhere in GMAC's mortgages or HELOCs is there any indication that GMAC will ever require a homeowner to obtain flood insurance greater than the minimum requirements of the NFIP or greater than GMAC's security interest in the property, although GMAC force-places customers into such excessive coverage anyway; and

      f)     GMAC's force-placed policies' premiums were so high, Plaintiff's Predecessors in Interest were unable to pay their monthly payments sending the loan into foreclosure necessitating a modification agreement that wiped out the borrowers' equity in the property and generated substantial additional debt.

94.     Considering the great business acumen and experience of GMAC in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuous and incomprehensible nature of the contract language involved, the oppressiveness of the terms and GMAC's application of them, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of risk between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

95.     If the mortgage or HELOC agreements at issue are understood to allow any of these practices, that contract is unconscionable.

96.     Plaintiff and the Class who paid excessive and unnecessary flood insurance premiums are entitled to rescission and restitution as a result of GMAC's unconscionable policies and practices as alleged herein.

## COUNT IV
**Conversion**

97.     Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

98.     GMAC had and continues to have a duty to maintain and preserve its customers' mortgage accounts, HELOC accounts, and mortgage escrow accounts, and to prevent their diminishment or alteration through its own wrongful acts.

99.     GMAC wrongfully collected insurance premiums from its customers' mortgage escrow accounts or added such payments to its customers' HELOC accounts.

100.     GMAC collected these premiums by wrongfully taking specific and readily identifiable funds from their mortgage customers' escrow accounts or misappropriating funds paid to their HELOC customers' account balances.

101.     GMAC has assumed and exercised the right of ownership over these funds without authorization to do so and in hostility to the rights of Plaintiff and the Class without legal justification.

102.     GMAC retains these funds unlawfully without consent of Plaintiff or the Class.

103.     GMAC intends to permanently deprive Plaintiff and the Class of these funds.

104.     Plaintiff and the Class properly own these funds, not GMAC, which now claims that it is entitled to their ownership contrary to the rights of Plaintiff and the Class.

105.     Plaintiff and the Class are entitled to the immediate possession of these funds.

22

106.    GMAC has wrongfully converted these specific and readily identifiable funds.

107.    GMAC's wrongful conduct is of a continuing nature.

108.    As a direct and proximate result of GMAC's wrongful conversion, Plaintiff and the Class have suffered and continue to suffer damages.

109.    As a result of GMAC's actions constituting conversion, Plaintiff and the Class have suffered actual damages for which GMAC is liable.  GMAC's liability should be measured by the extent of its conversion.

## COUNT V
### Unjust Enrichment

110.    Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

111.    GMAC received from Plaintiff and members of the Class a benefit in the form of overcharges for force-placed insurance policies which are excessive and unreasonable, and are the result of overcharging and overreaching.

112.    GMAC entered into agreements whereby its affiliates including, without limitation, SWBC and WNC, would provide force-placed insurance policies to Plaintiff and the Class which were paid for by Plaintiff and the Class at prices that were far higher than the market rates for similar policies.  GMAC knew that the charges for these policies were excessive and not the result of good faith practices.

113.    GMAC's affiliates, including SWBC and WNC, generated significant monies, revenues and benefits for GMAC to be able to exclusively provide force-placed insurance policies at unreasonable rates.

23

114.    As a result, Plaintiff and the proposed Class have conferred a benefit on Defendant, and Defendant had knowledge of this benefit.  Defendant has voluntarily accepted and retained the benefit conferred on it.

115.    Defendant will be unjustly enriched if allowed to retain the benefit, and each Class member is entitled to an amount equal to the amount each Class member enriched Defendant and for which Defendant has been unjustly enriched.

116.    Plaintiff and the Class demand an award against Defendant for the amounts equal to the amount each Class member enriched Defendant and for which Defendant has been unjustly enriched.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for relief as follows:

A.    That this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3), that Plaintiff be appointed as the Class representative, and that Plaintiff's counsel be appointed as counsel for the Class;

B.    That Plaintiff and the Class recover the damages determined to have been sustained by them, trebled as provided by law, with any applicable civil penalties, and that judgment be entered against GMAC on behalf of Plaintiff and each Class member;

C.    That GMAC, its subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees and all other persons acting or claiming to act on GMAC's behalf, be permanently enjoined and restrained from continuing and maintaining GMAC's unlawful conduct alleged in this Complaint;

D.      That Plaintiff and the Class be awarded prejudgment and postjudgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint in this action;

E.      That Plaintiff and the Class recover their costs of this suit, including attorneys' fees and costs, as provided by law; and

F.      That the Court direct all such further relief that it deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all claims so triable.

Dated: October 31, 2011                    Respectfully submitted,


Eric L. Cramer, Atty ID # 69289
Shanon J. Carson, Atty ID # 85957
Patrick F. Madden, Atty ID # 309991
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
ecramer@bm.net
scarson@bm.net
pmadden@bm.net

Brett Cebulash
Kevin S. Landau
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
Facsimile: (212) 931-0703
bcebulash@tcllaw.com
klandau@tcllaw.com

25

Kendall S. Zylstra
FARUQI & FARUQI, LLP
101 Greenwood Avenue
Suite 600
Jenkintown, PA  19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
kzylstra@faruqilaw.com

David M. Taus
DEVERO TAUS LLC
211 Somerville Road, Suite B
Bedminster, New Jersey 07921
Telephone:  (908) 375-8142
Facsimile:  (908) 375-8151
dtaus@deverotaus.com

Brent Walker
CARTER WALKER PLLC
2171 West Main Street, Suite 200
Cabot, AR 72023
Telephone: (501) 605-1346
Facsimile: (501) 605-1348
bwalker@carterwalkerlaw.com

Steven A. Owings
OWINGS LAW FIRM
1400 Brookwood
Little Rock, AR 72202
Telephone:  (501) 661-9999
Facsimile: (501) 661-8393
sowings@owingslawfirm.com