## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTREN DISTRICT OF PENNSYLVANIA

DENNIS A. THROM, individually and on
behalf of all others similarly situated,

                Plaintiff,

v.

GMAC MORTGAGE, LLC,

                Defendant.

Case No. 2:11-cv-6813

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## THE MOTION TO DISMISS OF DEFENDANT GMAC MORTGAGE, LLC

Eric L. Cramer, Attorney I.D. No. 69289
Shanon J. Carson, Attorney I.D. No. 85957
Patrick F. Madden, Attorney I.D. No. 309991
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.         INTRODUCTION .......................................................................................... iii

II.        STATEMENT OF FACTS ............................................................ 5

III.       ARGUMENT ................................................................................. 9

    A.       PLAINTIFF HAS STANDING ........................................... 9

        1.       **Plaintiff Is The Proper Representative For Both His Own And His Parents' Interests** ................................................... 11

        2.       **Plaintiff Has A Demonstrable Injury In Fact** ..................................... 11

        3.       **Plaintiff's Injury Was Caused By Defendant's Conduct** .................. 12

        4.       **Plaintiff's Requested Relief Will Remedy The Injury** ........................ 13

    B.       THE PARTIES' 2010 MODIFICATION AGREEMENT HAS NO PRECLUSIVE EFFECT ................................................... 13

    C.       THE VOLUNTARY PAYMENT RULE DOES NOT BAR PLAINTIFF'S CLAIMS ............................................................. 15

    D.       THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT 17

        1.       **A Valid Contract Existed Between GMAC And The Real Party In Interest** ................................................................. 18

        2.       **GMAC Breached The Mortgage Contract** ........................................... 18

        3.       **GMAC's Breach Resulted In Damages To Plaintiff** ........................... 24

        4.       **GMAC's Argument That Plaintiff's Parents Failed To Perform Their Obligations Under The Contract Is Flawed** ......................... 24

        5.       **Defendant Breached The Covenant Of Good Faith And Fair Dealing** ................................................................................. 24

    E.       THE COMPLAINT STATES A CLAIM UNDER TILA ............................. 30

        1.       **GMAC Is Liable Under TILA As A Creditor** ..................................... 30

        2.       **TILA Requires Disclosure Of Insurance Requirements And Premiums** ................................................................................. 31

        3.       **Plaintiff's TILA Claim Is Timely** ....................................................... 34

    F.       THE COMPLAINT STATES A CLAIM FOR CONVERSION ................... 35

    G.       THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT .. 37

IV.       CONCLUSION ................................................................................. 41

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abels v. JPMorgan Chase Bank, N.A.*,
  678 F.Supp.2d 1273 (S.D. Fla. 2009) ............................................................4, 26, 39

*Aetna Life Ins. Co. v. White*,
  242 So.2d 771 (Fla. Ct. App.1970) ...................................................................21

*Aldridge v. Peak Property and Cas. Ins. Co.*,
  873 So.2d 499 (Fla. Ct. App. 2004) .............................................................21, 26

*Allen v. Gordon*,
  429 So. 2d 369 (Fla. 1st DCA 1983) ....................................................................36

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006).............................................................................41

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1931 (2009).............................................................9

*Beach v. Ocwen Fed. Bank*,
  523 U.S. 410 (1998)..........................................................................................30

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................9

*Bruce Const. Corp. v. Federal Realty Corp.*,
  104 Fla. 93 (Fla. 1932)................................................................................14, 15

*Camper v. Manning*,
  No. 2:11-cv-157, 2011 WL 2550820 (E.D. Va. June 27, 2011)............................18

*Carolina Metal Prods. Corp. v. Larson*,
  389 F.2d 490 (5th Cir. 1968) ................................................................................15

*Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*,
  420 F.3d 1146 (11th Cir. 2005) ............................................................................24

*Citadel Commerce Corp. v. Cook Systems, LLC*,
  No. 8:08-cv-1923-T-33TGW, 2009 WL 1230067 (M.D. Fla. May 5, 2009) .........................37

*Cnty. of Brevard v. Miorelli Eng'g, Inc.*,
  703 So. 2d 1049 (Fla. 1997)..................................................................................25

*Cox v. CSX Intermodal, Inc.*,
  732 So.2d 1092 (Fla. 1st DCA 1999) ....................................................................25

*Cronk v. GMAC Mortgage, LLC*,
  No. 2:11-cv-5161, Dkt. No. 12, at 2 (E.D. Pa.) ...............................................................1, 15

*Curd v. Mosaic Fertilizer, LLC*,
  39 So.3d 1216 (Fla. 2010)..............................................................................................35

*Davis v. Federal Election Comm'n*,
  554 U.S. 724 (2008)........................................................................................................10

*Degirmenci v. Sapphire-Fort Lauderdale, LLLP*,
  693 F.Supp.2d 1325 (S.D. Fla. 2010) ...........................................................................39

*Donnelly v. Circuit City Stores, Inc.*,
  2007 WL 896337 (M.D. Fla. Mar. 22, 2007) ................................................................39

*Elmore v. Broward County*,
  507 So. 2d 1220 (Fla. Dist. Ct. App. 4th Dist. 1987) ...................................................14

*Estetique Inc. USA v. Xpamed LLC*,
  No. 11-CIV-61740, 2011 U.S. Dist. LEXIS 104427 (S.D. Fla. Sept. 14, 2011) ....................36

*Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*,
  141 F.3d 71 (3d Cir. 1998)..............................................................................................10

*Fields v. Thompson Printing Co.*,
  363 F.3d 259 (3d Cir. 2004).............................................................................................25

*Franz Tractor Co. v. J.I. Case Co.*,
  566 So.2d 524 (Fla. Ct. App. 1999)................................................................................15

*Graboff v. The Collern Firm*,
  No. 10-1710, 2010 WL 4456923 (E.D. Pa. Nov. 8, 2010) .............................................9

*Greene v. Alachua Gen. Hosp.*,
  705 So. 2d 953 (Fla. Dist. Ct. App. 1st Dist. 1998)................................................16, 17

*Hauben v. Harmon*,
  605 F.2d 920 (5th Cir. 1979) ..........................................................................................14

*Hayes v. Am. Int'l Group*,
  No. 09-2874, 2009 WL 4591531 (E.D. Pa. Nov. 30, 2009) ..........................................27

*Hoffenberg v. Bumb*,
  No. 11-1268, 2011 U.S. App. LEXIS 11741 (3d Cir. May 19, 2011)..............................9

*Hofstetter v. Chase Home Fin. LLC*,
  10-cv-1313, 751 F. Supp. 2d 1116 (N.D. Cal. 2011)..................................................passim

*Hurt v. Leatherby Ins. Co.*,
    380 So. 2d 432 (Fla. 1980) ...................................................................................14

*In re Checking Account Overdraft Litigation*,
    694 F.Supp.2d 1302 (S.D. Fla. 2010) ...................................................................39

*In re Newby*,
    344 B.R. 597 (Bkrtcy. W.D. Mo. 2006) .........................................................21, 26

*In re Smith*,
    866 F.2d 576 (3d Cir. 1988) ...................................................................................26

*Interfaith Community Org. v. Honeywell Int'l, Inc.*,
    399 F.3d 248 (3d Cir. 2005) .............................................................................11, 12

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ..................................................................................35

*JI-EE Industry Co., Ltd. v. Paragon Metals, Inc.*,
    No. 09-81590-CIV, 2010 WL 1141103 (S.D. Fla. March 23, 2010).....................38

*Joint Stock Society v. UDV North America, Inc.*,
    266 F.3d 164 (3d Cir. 2001) ...................................................................................10

*Kee v. Nat'l Reserve Life Ins. Co.*,
    918 F.2d 1538 (11th Cir. 1990) ..............................................................................36

*Kolbe v. BAC Home Loans Servicing, L.P.*,
    No. 11-10312, 2011 WL 36653944 (D. Mass. Aug. 18, 2011) ..............................23

*Lass v. Bank of America, N.A.*,
    No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 11, 2011) ................................23

*Lloyds Underwriters v. Netterstrom*,
    17 So.3d 732 (Fla. App. 2009) ...............................................................................20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................................10

*Manicini Enterprises, Inc. v. American Exp. Co.*,
    236 F.R.D. 695 (S.D. Fla. 2006) ............................................................................38

*McConnell v. Federal Election Comm'n*,
    540 U.S. 93 (2003)..................................................................................................13

*McTernan v. City of York*,
    577 F.3d 521 (3d Cir. 2009).....................................................................................9

*Mele v. FRB*,
    359 F.3d 251 (3d Cir. 2004)................................................................................................9

*N.G.L. Travel Associates v. Celebrity Cruises, Inc*.,
    764 So.2d 672 (Fla. App. 2000)........................................................................................41

*Pacific Mut. Life Ins. Co. v. McCaskill*,
    126 Fla. 82 (Fla. 1936).....................................................................................................16

*Pailes v. HSBC Mortgage Servs.*,
    No. 10-cv-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011) .................................................4

*Payne v. Humana Hosp. Orange Park*,
    661 So. 2d 1239 (Fla. Dist. Ct. App. 1st Dist. 1995)............................................................16

*Raines v. Byrd*,
    521 U.S. 811 (1997)..........................................................................................................11

*Ramadan v. Chase Manhattan Corp.*,
    156 F.3d 499 (3d Cir. 1998).............................................................................................34

*Reese v. JPMorgan Chase & Co*.,
    686 F.Supp.2d 1291 (S.D. Fla. 2009) ...............................................................................39

*Reszler v. Travelers Prop. Cas. Ins.*,
    No. 06-586, 2007 WL 1035024 (D.N.J. Apr. 3, 2007)..........................................................41

*RGS Contractors, Inc. v. GC Builders, Inc.*,
    348 F.3d 897 (10th Cir. 2003) ....................................................................................21, 26

*Roach v. Option One Mortgage Corp.*,
    598 F. Supp. 2d 741 (E.D. Va. 2009) ................................................................................31

*Rollins, Inc. v. Butland*,
    951 So.2d 860 (Fla. App. 2006)........................................................................................18

*Rossman v. Fleet Bank, N.A.*,
    280 F.3d 384 (3d Cir. 2002)..............................................................................................32

*Sepe v. City of Safety Harbor*,
    761 So. 2d 1181 (Fla. App. 2000)......................................................................................25

*Shibata v. Lim*,
    133 F. Supp. 2d 1311 (M.D. Fla. 2000).............................................................................25

*Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*,
    650 F.Supp.2d 1213 (S.D. Fla. 2009) ...............................................................................38

*Southern States Power Co. v. Ivey*,
   118 Fla. 756, 160 So. 46 (1935)........................................................17

*Tardif v. People for the Ethical Treatment of Animals*,
   No. 09-cv-537, 2011 U.S. Dist. LEXIS 128092 (M.D. Fla. Nov. 4, 2011) ............................35

*Technical Packaging Inc. v. Hanchett*,
   992 So.2d 309 (Fla. App. 2008).......................................................17

*United Contractors, Inc. v. United Const. Corp.*,
   197 So.2d 695 (Fla. 2d DCA 1966) ...................................................15

*Vician v. Wells Fargo Home Mortgage*,
   No. 2:05-cv-144, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006) ...............................4

*Warshall v. Price*,
   629 So.2d 903 (Fla. 4th DCA 1993) ..................................................36

*White v. Harmon Glass Service of Florida, Inc.*,
   316 So.2d 599 (Fla. Ct. App. 1975)...................................................21

*Williams v. Empire Funding Corp.*,
   109 F. Supp. 2d 352 (E.D. Pa. 2000) .................................................30

*Williams v. Wells Fargo Bank, N.A.*,
   No. 11-21233, (S.D. Fla.) ................................................... passim

*Wise v. Mortgage Lenders Network USA, Inc.*,
   420 F. Supp. 2d 389 (E.D. Pa. 2006) .................................................34

*Wulf v. Bank of America, N.A.*,
   No. 10-5176, 2011 WL 2550628 (E.D. Pa. Jun. 27, 2011)........................... passim

## Statutes

15 U.S.C. § 1602(f).........................................................................31

15 U.S.C. § 1639(a)(2)(A) ..............................................................32, 34

15 U.S.C. § 1641.............................................................................31

15 U.S.C. § 1649b(2) .......................................................................30

42 U.S.C. § 4012a.........................................................................8, 28

42 U.S.C. § 4013...........................................................................28

Fla. Stat. § 735.201 .......................................................................5, 10

Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ..........................................................................30

**OTHER AUTHORITIES**

12 C.F.R. §§ 226.4, 226.17, 226.18 ........................................................................................32, 33

11 Fla. Jur. Contracts § 119 (1979) .............................................................................................21

Plaintiff Dennis Throm ("Plaintiff"), individually and on behalf of all others similarly situated, through his undersigned counsel, respectfully submits this memorandum of law in opposition to the motion to dismiss of GMAC Mortgage, LLC ("GMAC" or "Defendant").

## I.   <u>INTRODUCTION</u>

GMAC has engaged in an extensive and systematic program to automatically force-place excessive and unwarranted flood insurance on its mortgagors without regard for the terms of the mortgage contract.  GMAC's conduct is motivated by financial incentives because: (a) the increased insurance premiums inflate the monthly mortgage payments required of borrowers; and (b) GMAC receives an undisclosed commission or kickback from its affiliates who force-place the flood insurance policies.  Tellingly, this scheme began contemporaneously with the housing market's collapse which reduced GMAC's ability to generate fees through loan origination and securitization.[1]

Plaintiff Dennis A. Throm ("Plaintiff") and his octogenarian parents ("Predecessor in Interest") were victims of GMAC's scheme.  GMAC force-placed flood insurance on Plaintiff's Predecessor in Interest, even though: (a) flood insurance was not required, as evidenced by the

---

[1] GMAC is not alone among large mortgage banks in turning to these tactics.  The force-placed insurance abuses of the country's largest banks, including GMAC, have been widely covered in the press in recent years. *See, e.g.*, *Big Banks Face Inquiry Over Home Insurance*, New York Times (Jan. 10, 2012) (attached as Exhibit 1); *Forced Insurance Adds to Home Woes:  Hidden Practice of Imposing Coverage Adds Burden to Those at Risk of Foreclosure*, San Diego Union-Tribune (Aug. 21, 2011) (attached as Exhibit 2); *Lawsuit Blasts Pennsylvania Flood Policies*, Pittsburgh Tribune-Review (Apr. 9, 2011) (attached as Exhibit 3); *Insurance Dictated by the Bank*, New York Times (Mar. 26, 2011) (attached as Exhibit 4); *With Kickbacks on Forced Placed Insurance, the U.S. Mortgagegate Scandal Just Gets Deeper*, Money Morning (Nov. 11, 2010) (attached as Exhibit 5); *Ties to Insurers Could Land Mortgage Servicers in More Trouble*, American Banker, (Nov. 9, 2010) (attached as Exhibit 6); *Cape Coral Man Sued Bank, Won; They're Back for More*, The News-Press (Fort Myers, FL) (Oct. 8, 2009) (attached as Exhibit 7). Additionally, as referenced in the related case *Cronk v. GMAC Mortgage, LLC*, No. 2:11-cv-5161, Dkt. No. 12, at 2 n.1 (E.D. Pa.), numerous cases have been filed alleging abuses of force-placed flood insurance against lenders.

original flood certification required by Manning Financial Group, the loan originator, to close on

the loan, as well as a FEMA determination on June 24, 2010; and (b) Plaintiff's Predecessor in

Interest's mortgage loan was sold, assigned and/or securitized subject to the original

determination that no flood insurance was required.  Nevertheless, the coverage for the flood

insurance policies GMAC demanded and force-placed was ***up to three times the amount of the***

***principal on the mortgage*** (*i.e.*, three times GMAC's "rights in the Property").  The monthly

premiums charged for this unnecessary flood insurance were increased to almost ***double the***

***monthly mortgage payments*** at rates that were swollen by GMAC's receipt of kickbacks or

commissions from its affiliates.

Consequently, GMAC's robo-insurance conduct led Plaintiff's Predecessor in Interest

into the jaws and teeth of GMAC's robo-signing foreclosure program.[2]  GMAC began

foreclosure proceedings as a direct result of the money it claimed was due that arose solely out of

---

[2] The same robotic process employed by GMAC in obtaining improper foreclosures is on full display in connection with GMAC's force-placed insurance scheme alleged here.  *See New York Times*, September 20, 2010, *GMAC Halts Foreclosures in 23 States for Review* (attached as Exhibit 8) ("GMAC Mortgage, one of the country's largest and most troubled home lenders, said on Monday that it was imposing a moratorium on many of its foreclosures…." because Florida Default Law Group -- the mill that GMAC used to foreclose on properties (including Plaintiff's) – had to withdraw false affidavits); *Washington Post*, September 22, 2010, *Ally Financial Legal Issue with Foreclosures May Affect other Mortgage Companies* (attached as Exhibit 9) ("As head of Ally's foreclosure document processing team, 41 year old Jeffrey Stephan … [i[n sworn depositions taken in December and June … revealed his shortcuts when reviewing the files.  He said he would glance at the borrower's names, the debt owed and a few other numbers but would not read through all the documents as legally required.  He would then sign them.  The files were packed up in bulk and sent off for notarization several days later."); *Wall St. Journal*, September 22, 2010, *GMAC Spotlight on "Robo-Signer"* (attached as Exhibit 10) ("This week, mortgage-servicing giant GMAC Mortgage Co. halted foreclosures in 23 states due to questions about documents signed by one of its robo-signers, Jeffrey Stephan.  Until now, Mr. Stephan was an anonymous middle manager whose job is to sign affidavits, assignments of mortgages and other documents that establish a bank's ownership of a mortgage, thus giving the bank the right to foreclose.  But, as revelations come to light about how Mr. Stephan and other robo-signers do their jobs, a picture is emerging of a foreclosure process that critics say is just as flawed as the lax lending and perverse incentives that created the lending crisis.").

GMAC's force-placed flood insurance scheme.  Ultimately, GMAC forced Plaintiff to agree to a modification of the loan in order to avoid losing the family home he inherited from his parents. The modification wiped out $11,000 in equity that Plaintiff's Predecessor in Interest had in the property, and added another $11,000 in new debt.

Despite its wrongdoing, GMAC claims that its conduct was unremarkable and that Plaintiff should be thankful for GMAC's munificence in providing a loan modification.  GMAC then offers a number of technical arguments that falsify or ignore its wrongdoing to support its motion to dismiss.  GMAC's arguments do not support dismissal.  For instance, GMAC's primary argument – that Plaintiff lacks standing – is founded on GMAC's unstated premise that the claims at issue died along with Plaintiff's elderly parents.  As demonstrated below, not only does Plaintiff have standing to pursue those claims as his parent's sole heir and the petitioner to the summary administration of his mother's estate, but he also has claims in his own right for the harm caused to him by GMAC that led to a forced foreclosure, modification and extraction of $22,000.

GMAC's other arguments fare no better.  For example, its assertion that the Complaint does not state claims for breach of contract and/or good faith and fair dealing is based on its incorrect belief that it has unbridled power under the mortgage contract to do whatever it wanted, whenever it wanted.  Here, GMAC did not have contractual power to force-place flood insurance *at all* since the loan was originated pursuant to a certification that flood insurance was not required on the property.  GMAC accepted the assignment of the loan subject to that certification and nothing changed in the ensuing five years to give GMAC any reason to force-place flood insurance.  Moreover, even if flood insurance was required, GMAC exceeded its authority under any fair reading of the contract by force-placing insurance: (a) at outrageous and unconscionable

rates (up to ten times what insurance should cost) that were swollen by GMAC's receipt of kickbacks, fees and/or commissions; and (b) in an amount that was at least three times higher than GMAC's "rights in the Property."  As a result, Plaintiff has stated a claim for breach of contract and good faith and fair dealing.[3]

The remainder of GMAC's grounds for dismissal similarly lack merit:

- Plaintiff has stated a TILA claim.  GMAC breached TILA when it changed the terms of the loan by requiring flood insurance that was not required at origination.  Since GMAC tacked the premiums and interest onto the loan, it had a TILA disclosure duty that was not met through its false flood insurance notices;

- The economic loss rule does not preclude Plaintiff's conversion claim;

- Plaintiff's unjust enrichment claim is not precluded by the existence of a mortgage contract.  Breach of contract and unjust enrichment can be alleged in the alternative and to do so here is particularly appropriate as Defendant argues that Plaintiff is a stranger to the mortgage contract.  In *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233 (S.D. Fla.

---

[3] Indeed, numerous federal courts, including this Court, have denied motions to dismiss in cases involving form mortgage contracts similar to the contract here.  *See, e.g., Wulf v. Bank of America, N.A.*, No. 10-5176, 2011 WL 2550628 (E.D. Pa. Jun. 27, 2011) (denying motion to dismiss in force-placed flood insurance case); *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) (denying motion to dismiss breach of contract and unjust enrichment claims in force-placed insurance case); *Pailes v. HSBC Mortgage Servs.*, No. 10-cv-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011) (denying motion to dismiss breach of contract in force-placed insurance case); *Abels v. JPMorgan Chase Bank, N.A.*, 678 F.Supp.2d 1273 (S.D. Fla. 2009) (Florida district court denying motion to dismiss); *Vician v. Wells Fargo Home Mortgage*, No. 2:05-cv-144, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006) (denying motion to dismiss claims similar to those asserted in this case).  In *Hofstetter v. Chase Home Finance LLC*, the district court recently gave final approval to a class action settlement reached by the parties after a motion to dismiss was denied and the case was certified as a class action.  *See Hofstetter v. Chase Home Fin. LLC*, 10-cv-1313 (N.D. Cal. Nov. 14, 2011) (final approval order) (settlement-related documents can be found at http://www.chasefloodinsurancelitigation.com/).

2011), the district court recently refused to dismiss an unjust enrichment claim against
Wells Fargo under facts almost identical to those here; and

- The voluntary payment doctrine does not preclude Plaintiff's claims.  The payments at
issue were coerced by GMAC; who also engaged in material misrepresentations and
omissions to obtain them.[4]

## II.   <u>STATEMENT OF FACTS</u>

Plaintiff is a resident of Sebastian, Florida and owns a home that he inherited from his
parents, Vernon H. Throm and Agnes K. Throm.  Subsequent to his mother's death in October
2008 (his father died in October 2004), Plaintiff took possession and ownership of the property
as the sole heir to his mother's estate.  Compl. ¶ 12.  Because the Estate of Agnes Throm was
worth less than $75,000, Plaintiff petitioned to invoke Florida's "Summary Administration"
procedure to administer the estate.  *See generally* Exhibit 11 (Petition and Order in Plaintiff's
summary administration of his mother's estate); *see also* Fla. Stat. § 735.201 (Florida's summary
administration statute).  Because the summary administration procedure does not name a
"personal representative," "executor," or "administrator," neither Plaintiff nor any other person
was given any of those titles.  Nevertheless, Plaintiff was the petitioner and sole representative of
his mother's estate.  He was also the sole heir and beneficiary to the estate.

On November 3, 1997, Plaintiff's parents obtained a $66,000 mortgage from Manning
Financial Group, Inc.  Compl. ¶ 23.  Plaintiff's parents were required to pay a fee to a third-party
company, Transamerica, in order to determine whether their property required flood insurance.
Federal regulations preclude parties from closing on loans without flood insurance if it is

---

[4] The parties have met and conferred regarding Count III of Plaintiff's Complaint
(Unconscionability).  The parties have agreed that Plaintiff will withdraw that cause of action.

determined that it is necessary under federal flood insurance regulations.  Compl. ¶ 24.  The loan

closed without Plaintiff's Predecessor in Interest having to obtain flood insurance.  Compl. ¶ 25.

The mortgage contract (Ex. B to Def. Br.) defines "Lender" as Manning Financial.

Paragraph 5 of the mortgage contract provides:

> **Hazard or Property insurance**. Borrower shall keep the improvements now
> existing or hereafter erected on the Property insured against loss by fire, hazards
> included within the term "extended coverage" and any other hazards, **including
> floods or flooding**, **for which Lender requires insurance**. This insurance shall
> be maintained in the amounts and for the periods that Lender requires... If
> Borrower fails to maintain coverage described above, **Lender may, at Lender's
> option, obtain coverage to protect *Lender's rights in the Property* in
> accordance with paragraph 7**.

*Id.* (emphasis added).

GMAC, as the successor or assignee of the original Lender, accepted the assignment (or

purchased the loan) subject to the Lender's determination that flood insurance was not required

and GMAC was powerless to then alter the terms of the loan by requiring flood insurance.  *See

id.* at ¶ 12 ("the covenants and agreements of this Security Instrument shall bind and benefit the

successors and assigns of Lender and Borrower….").  There is nothing in the mortgage contract

that provides GMAC the right to change the terms.

Nevertheless, beginning in 2002 (five years after the loan closed, during which time flood

insurance was never required based on the certification provided at closing, *see* Compl. ¶ 24),

GMAC began insisting that Plaintiff's Predecessor in Interest obtain flood insurance.  GMAC's

practices are highly automated and its demand for flood insurance was made without regard for

the fact that: (a) Manning Financial through Transamerica had already determined that the

property did not require flood insurance; and (b) GMAC had no reason to discredit the

Transamerica decision.  Compl. ¶ 5.

6

Between 2002 and June 2006, GMAC decided to force-place flood insurance coverage under Paragraph 5 of the mortgage contract equal to its "rights in the Property," (*i.e.*, approximately the principal amount of the outsanding loan balance ($60,000)), charging approximately $864 in annual premiums.  For the policy year July 1, 2006 – July 1, 2007, GMAC continued to require the same amount of coverage, but tripled the annual premiums to $2,255.37.  Compl. ¶ 30.  Over the next few years, not only did GMAC continue to increase the premiums *30%-50% per year*, which by 2009, had risen by *700%* since 2005, but GMAC also inexplicably began to require coverage amounts that far exceeded its financial interest in the property.  The flood insurance coverage demanded by GMAC rose from $60,000 in 2002-2006, to $84,000 in 2007; to $167,000 in 2008; and to $176,000 for 2009 (even though the loan balance was approximately $55,000 at that time).  Compl. ¶¶ 30-31.  These improper and non-contractual changes by GMAC increased the flood insurance annual premiums to $5,882.18 for 2008 and $6,159.14 for 2009.  Compl. ¶ 30.

GMAC force-placed this unnecessary and unwarranted flood insurance with the assistance of brokers who specialize in lender-placed insurance and help GMAC identify (through highly automated systems) which homeowners to target.  These brokers promise GMAC "growth" and profitability" and pay a kickback or commission to GMAC for the privilege of being able to provide force-place policies at obscenely unreasonable rates.  Compl. ¶¶ 6-8, 41, 113.  As a result of these kickbacks, the rates for premiums themselves were "excessively high, by the order of up to ten fold" and "far in excess of any amount that could be considered reasonable."  Compl. ¶¶ 9, 32, 49-50, 112.

GMAC indicated with each increase that "we have purchased flood insurance **protecting our interest in your property** [and that the purchase is required by federal law]."  *See* Def. Br.

at Ex. D-F.  During this time period, however, GMAC's interest in Plaintiff's property never

materially changed.  Plaintiff owed approximately $60,000 as the principal amount of the loan

outstanding.  Neither the federal minimum coverage under the National Flood Insurance Act

("NFIA") nor GMAC's "rights in the Property" changed during this time period.  The NFIA

minimum flood coverage is the lesser of the amount outstanding, replacement value or $250,000

in coverage.  *See* 42 U.S.C. § 4012a.  As a result, since neither GMAC's "rights in the Property"

nor the flood regulations changed, there was no good faith reason to force-place insurance in

these increasingly excessive amounts above and beyond GMAC's "rights in the Property" – *i.e.*,

at most, the principal balance of the mortgage.

      Solely as a result of the force-placed flood insurance premiums – ***which doubled the***

***monthly mortgage payments***, GMAC foreclosed on the loan in May 2010.  Compl. ¶¶ 34, 37.

On June 24, 2010, while in foreclosure proceedings, Plaintiff retained a surveyor who

determined, consistent with the certification performed by Transamerica in 1997 before closing,

that the property did not and had never required flood insurance in order to comply with federal

flood regulations.  Compl. ¶ 35.  GMAC continued with the foreclosure and refused to refund

any premiums charged prior to the surveyor's June 2010 determination.  Compl. ¶ 36.

      In August 2010, in order to save his house, Plaintiff was forced to enter into a

modification of the loan, resulting in Plaintiff owing $22,000 more on his mortgage.  The

modification agreement did not, however, purport to release either party from any obligations

under the original loan and provides that nothing in it "shall be understood or construed to be a

satisfaction or release in whole or in part of the Note and Security Instrument.  Ex. J to Def. Br.

at 2 ("Modification Agreement").  This provision was bilateral and mutually enforceable.

III.   **ARGUMENT**

To survive a Rule 12(b)(6) motion to dismiss, a complaint need state "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In determining whether a complaint states allegations with sufficient plausibility, "a court must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1931, 1949 (2009).  The allegations must also be "interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hoffenberg v. Bumb*, No. 11-1268, 2011 U.S. App. LEXIS 11741 (3d Cir. May 19, 2011) (quoting *Iqbal*, 129 S. Ct. at 1949).

This standard does not impose a "probability requirement," but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the cause of action. *Id.* at 556.  In this appraisal, courts may not consider materials extraneous to the pleadings unless those materials are "*integral to* or *explicitly* relied upon in the complaint." *Mele v. FRB*, 359 F.3d 251, 256 (3d Cir. 2004) (emphasis in original).[5]

A.     **PLAINTIFF HAS STANDING**

Plaintiff has standing to assert the claims in this lawsuit as both the sole heir to his Predecessor in Interest's estate and as the only cognizable and competent representative of the

---

[5] In a footnote, Defendant asserts that Florida law applies.  Resolution of any choice of law analysis is premature at this stage of the litigation.  *See Graboff v. The Collern Firm*, No. 10-1710, 2010 WL 4456923 (E.D. Pa. Nov. 8, 2010) (when confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings) (citing *Hayes v. Am. Int'l Group*, No. 09-2874, 2009 WL 4591531, at *3 (E.D. Pa. Nov. 30, 2009)).  Without waiving this position, Plaintiff will analyze the claim under Florida law in addressing this motion.

estate.  Furthermore, as the petitioner in the summary administration of his mother's estate –

making him the *de facto* administrator of the estate – Plaintiff is the real party in interest under

Rule 17 and may bring this action under his own name without joining the estate.  *See* Fed. R.

Civ. P. 17; *see also* Fla. Stat. § 735.201 (Florida's summary administration statute); Exhibit 11

(Petition and Order in Plaintiff's summary administration of his mother's estate).

 The requirement that a claimant have "standing is an essential and unchanging part of the

case-or-controversy requirement of Article III."  *Davis v. Federal Election Comm'n*, 554 U.S.

724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "The

standing inquiry focuses on whether the plaintiff is the proper party to bring this suit."  *Fair

Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir.

1998) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  To qualify for standing, a claimant

must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to

the defendant's challenged behavior; and likely to be redressed by a favorable ruling.  *Lujan*, 504

U.S. at 560-61.  "These requirements ensure that plaintiffs have a 'personal stake' or 'interest' in

the outcome of the proceedings, 'sufficient to warrant ... [their] invocation of federal-court

jurisdiction and to justify exercise of the court's remedial powers on ... [their] behalf.'"  *Joint

Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 175 (3d Cir. 2001) (quoting *Wheeler v.

Travelers Ins. Co.*, 22 F.3d 534, 537-38 (3d Cir.1994) (citations omitted)).  At the pleading stage,

"general factual allegations of injury resulting from the defendant's conduct may suffice, for on a

motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are

necessary to support the claim.'"  *Lujan*, 504 U.S. at 561 (citation omitted).

1.      **Plaintiff Is The Proper Representative For Both His Own And His Parents' Interests**

Plaintiff is the only cognizable representative for the claims of his Predecessor In Interest and he was personally harmed by GMAC as well.  With respect to Plaintiff's Predecessor in Interest, one of two parties must have standing: 1) the Estate of Agnes Throm; or 2) the sole heir to the Estate of Agnes Throm.  Given the small size of Ms. Throm's Estate, no executor or personal representative was named.  Thus, the estate could only be represented by one of two persons: 1) the petitioner in the summary administration action; or 2) the sole heir to the estate.  Either person is Plaintiff Dennis A. Throm.  *See* Exhibit 11 (Plaintiff's summary administration documents).

2.      **Plaintiff Has A Demonstrable Injury In Fact**

Plaintiff has demonstrated an injury in fact both to the Estate of his Predecessor in Interest and to himself as the sole heir to and beneficiary of that Estate.  The first standing prerequisite is that the plaintiff must demonstrate an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent."  *See Interfaith Community Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005) (quoting *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 225 (2003)).  "The injury must be an invasion of a concrete and particularized legally protected interest, and may not be either conjectural or hypothetical, or too remote temporally. That said, an identifiable trifle is enough."  *Id.* (internal citations omitted).  The plaintiff must have a "particularized" injury which means that "the injury must affect the plaintiff in a personal and individual way."  *Raines*, 521 U.S. at 818 (quoting *Lujan*, 504 U.S. at 560-61 and n.1).

One injury caused by GMAC's conduct is the reduction in the size of the Estate of which Plaintiff is the representative.  This reduction occurred both through the unwarranted flood insurance charges to Plaintiff's Predecessor in Interest and through the foreclosure caused by the

flood insurance premiums.  The harm to Plaintiff's inheritance and the harm to the Estate

constitute injuries in fact sufficient to confer standing to Plaintiff.  Indeed, his position as

petitioner for the Estate of Agnes Throm in the summary administration is sufficient to confer

standing as the representative of the Estate.  Second, the foreclosure on the home occurred

subsequent to Plaintiff's mother's death.  The injuries stemming from the foreclosure are

Plaintiff's because he was the sole beneficiary of the Estate.  Plaintiff thus meets the injury

requirement in two capacities since that requirement demands only "an identifiable trifle."  *See*

*Interfaith Community Org.*, 399 F.3d at 254.

### 3.      Plaintiff's Injury Was Caused By Defendant's Conduct

As set forth in the Complaint, Plaintiff's injuries, in his capacity as the representative of

his Predecessor in Interest's Estate and as the beneficiary of the Estate, were caused by

Defendant's conduct.  *See, e.g.*, Compl. ¶¶ 37-38 (detailing foreclosure costs and proceedings);

*id.* ¶¶ 30-31 (detailing flood insurance premium charges).  A plaintiff must demonstrate a "causal

connection between the injury and the conduct complained of."  *Interfaith Community Org.,* 399

F.3d at 255.  To do this, the plaintiff must show that the injury is "fairly traceable to the

challenged action of the defendant and not the result of some third party not before the court."

*Id.* (quoting *McConnell*, 540 U.S. at 225).  Here, the causal connection between GMAC's

conduct and the alleged injuries is clear:  Through its robo-insurance scheme, GMAC improperly

force-placed flood insurance and withdrew funds from Agnes Throm's account ultimately

forcing her estate into foreclosure before Plaintiff had the mortgage placed in his name.  This

connection is a direct causal relationship due solely to GMAC's conduct and is not the result "of

some third party not before the court."  *See id.* at 255.  Plaintiff has thus met the causation

requirement.

### 4.      Plaintiff's Requested Relief Will Remedy The Injury

The requested relief will remedy Plaintiff's injuries.  *See* Compl. at Prayer for Relief.  A

plaintiff must show the "substantial likelihood that the requested relief will remedy the alleged

injury in fact."  *McConnell*, 540 U.S. at 225.  Thus, "although standing in no way depends on the

merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature

and source of the claim asserted."  *Id.* at 227.  Here, the damage to the Estate of Plaintiff's

Predecessor in Interest and Plaintiff's inheritance is monetary in nature.  This damage is

quantifiable.  The requested monetary and injunctive relief will remedy the damage and ensure

that GMAC's conduct will cease.  Plaintiff has thus met the redressability requirement for

Article III standing.  Because Plaintiff has met all requirements for Article III standing,

Defendant's argument must fail.

### B.      THE PARTIES' 2010 MODIFICATION AGREEMENT HAS NO PRECLUSIVE EFFECT

GMAC next argues that the "modification of the Loan" bars Plaintiff's claims.  Def. Br.

at 12-13.  GMAC is wrong.  It was because of GMAC's force-placed flood insurance scheme

that Plaintiff was in the untenable position of being forced to pay $22,000 as ransom to retain his

family home.  Compl. ¶¶ 3, 37-38.  GMAC's modification that included an additional $22,000 in

debt in no way relieves GMAC for its liability for that scheme.

Factually, there is nothing within the Modification Agreement (Ex. J. to Def. Br.) that

indicates Plaintiff released his or his Predecessor in Interest's claims relating to Defendant's

force-placed insurance.  To the contrary, Paragraph 10 of the Modification Agreement clearly

states that "the provisions of the Note and Security Instrument shall continue in full force and

effect."  *Id.* at 4.  Thus, the original note was never cancelled or terminated.  If any doubt

remains that the parties retained claims under the original agreement, the Modification

Agreement states that "[n]othing in this [Modification] Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument." *Id*.  "Although a contract may be modified, the general rule is that the original contract stays in force except as modified."  *Hauben v. Harmon*, 605 F.2d 920, 925 (5th Cir. 1979).  Thus, the Modification Agreement preserved, and did not waive, the parties' obligations under the Note and Security Instrument.

Legally, even if the Modification Agreement could be interpreted (in direct opposition to its express terms) to cancel the original agreement, that would not necessarily bar Plaintiff's claims.  "[T]ermination or cancellation of a contract does not, in all instances, eliminate or extinguish claims or causes of action arising out of that contract and the legal relationship between the parties thereto."  *Elmore v. Broward County*, 507 So. 2d 1220, 1222 (Fla. Dist. Ct. App. 4th Dist. 1987).

Moreover, under Florida law, Plaintiff did not waive or release any claims because the Modification Agreement did not contain a release.  "[T]he language used in the release is the best evidence of the parties' intent [and when] that language is clear and unambiguous, the courts cannot indulge in construction or interpretation of its plain meaning."  *Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 433 (Fla. 1980).  Even if the language of the Modification Agreement could be construed as ambiguous, Florida law would not allow a waiver.  "When the alleged waiver rests upon contract, and the terms of the contract are ambiguous on the question, the doubt should be resolved against the waiver."  *Bruce Const. Corp. v. Federal Realty Corp.*, 104 Fla. 93, 100 (Fla. 1932).

Finally, the cases cited by GMAC do not support its argument.  Defendant suggests that Plaintiff is estopped from pursuing his claim, citing *United Contractors, Inc. v. United Const.*

*Corp.*, 197 So.2d 695, 701-02 (Fla. 2d DCA 1966).  That case explains that "where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim or right, he cannot afterward assume a position inconsistent with such act or conduct to the prejudice of another who has acted in reliance on such conduct.  The doctrine requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party."  *Id.*  Here, it is ***GMAC*** who takes inconsistent positions.  In the Modification Agreement it signed, GMAC asserted that the original agreement "shall continue to full force and effect."  Ex. J. to Def. Br. at 4.  Now, in contrast, GMAC argues that the original agreement is dead and Plaintiff is barred from asserting rights under the agreement.  Thus, *United Contractors* does not support GMAC's argument that the Modification Agreement bars Plaintiff's claims.[6]  For the above reasons, the parties' 2010 Modification does not preclude Plaintiff's claims.

### C.    THE VOLUNTARY PAYMENT RULE DOES NOT BAR PLAINTIFF'S CLAIMS

In another meritless argument, GMAC asserts that Plaintiff's claims are barred by the common law voluntary payment rule.  Def. Br. at 13-15.  Under Florida law, the voluntary payment rule provides that "money voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party at the time of payment was

---

[6] GMAC cites *Franz Tractor Co. v. J.I. Case Co.*, 566 So.2d 524, 525 (Fla. 2d DCA 1999) for the proposition that "modification of a contract abrogates or supersedes the original contract..." In *Franz Tractor,* the court did not hold that the original contract was abrogated or superseded. *Id.*  Instead, practically reading from the Modification Agreement at issue in this case, the court explained that "the modification supplemented rather than replaced the dealer contract."  *Id.* Thus, here too, the Modification Agreement by its terms did not abrogate the underlying contract or claims relating to that contract.   GMAC also cites *Carolina Metal Prods. Corp. v. Larson*, 389 F.2d 490, 494 (5th Cir. 1968) for the proposition that a modification can "nullify" a prior agreement.  However, as discussed above, the Modification Agreement here makes clear that "[n]othing in this [Modification] Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument."

ignorant or mistook the law as to his liability." *Pacific Mut. Life Ins. Co. v. McCaskill*, 126 Fla. 82, 90 (Fla. 1936). This argument fails because the insurance payments were coerced, *i.e.*, force-placed, and GMAC made material misrepresentations and omissions to extract the payments from Plaintiff, including not disclosing the kickbacks. *See* Compl. ¶¶ 32, 50. For these reasons, the voluntary payment rule is not applicable here.

First, the voluntary payment rule is inapplicable because the Complaint alleges that GMAC's scheme involved the coercive extraction of payments. "[W]hen money is obtained through imposition, a count for money had and received is applicable." *Payne v. Humana Hosp. Orange Park*, 661 So. 2d 1239, 1240 (Fla. Dist. Ct. App. 1st Dist. 1995) (citing *Cullen v. Seaboard Air Line R.R. Co.*, 63 Fla. 122, 58 So. 182 (1912)). Indeed, the insurance premiums were "force-placed" and, therefore, not voluntarily obtained. Florida law is perfectly clear that the voluntary payment rule has never applied to imposed or coerced payments.[7] Here, allegations of imposition and coercion are at the heart of Plaintiff's complaint. "GMAC has the power and exerts that power to force borrowers to pay for the excessive and worthless insurance since GMAC simply can withdraw the amounts from escrow, add the amounts to the loan balance, and ultimately foreclose on the property." Compl. ¶ 3. Moreover, Plaintiff faced the threat of foreclosure and eventual foreclosure if payments were not made. Thus, the voluntarily payment rule cannot bar Plaintiff's claims.

Moreover, the excessive prices of the force-placed flood insurance premiums also defeats GMAC's argument. Charging an unreasonable price may constitute an imposition or coercion

---

[7] At least one Florida Appellate Court has "defined imposition as something less than coercion, stating that imposition occurs when the payee takes advantage of his position, or the circumstances in which another is placed, [and] exacts a greater price for services rendered than is fair and reasonable. *Greene v. Alachua Gen. Hosp.*, 705 So. 2d 953, 953 (Fla. Dist. Ct. App. 1st Dist. 1998) (internal quotations omitted).

for purposes of an action on a contract to recover money.  *See Southern States Power Co. v. Ivey*, 118 Fla. 756, 760, 160 So. 46, 47 (1935).  There, the court reasoned that:

> Where a person taking advantage of his position, or the circumstances in which another is placed, exacts a greater price for services rendered than is fair and reasonable, where such a compensation only is allowable, the exaction of the unreasonable price for the service rendered may be said to be an imposition . . . . Such an imposition would support an action of assumpsit for money received. . . .

*Southern States Power Co.*, 160 So. at 47.  Here, GMAC's force-placed insurance premiums **"increased by over 700% in the span of just four years."**  Compl. ¶ 30 (emphasis added). Moreover, "the annual premiums were made even more excessive by GMAC's demand for coverage in excess of the loan balance."  Compl. ¶ 31.  The outrageous price of the force-placed insurance defeats GMAC's invocation of the voluntary payment rule.

Additionally, the voluntary payment rule cannot bar Plaintiff's claims because GMAC utilized material misrepresentations and omissions to obtain the force-placed insurance premium payments.  The voluntary payment rule is inapplicable where "the payee takes advantage of his position" to obtain the payments.  *Greene*, 705 So. 2d at 953.  Here, Plaintiff alleges that GMAC extracted the payments from Plaintiff by misrepresenting that the property required the flood insurance under federal law.  *See* Compl. ¶¶ 27, 35, 36.  The Complaint also alleges undisclosed kickbacks or commissions.  *See* Compl. ¶¶ 32 & 50. Accordingly, because of these material misrepresentations, the voluntary payment rule is inapplicable and cannot bar Plaintiff's claims.

### D.   THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT

GMAC force-placed excessive and unwarranted flood insurance in violation of the mortgage contract.  A cause of action for breach of contract under Florida law has three elements:  1) a valid contract; (2) a material breach; and 3) damages resulting from the breach. *See Technical Packaging Inc. v. Hanchett*, 992 So.2d 309, 313 (Fla. App. 2008) (citing *Rollins,*

*Inc. v. Butland*, 951 So.2d 860, 876 (Fla. App. 2006)).  In addition, the claimant must prove

performance of his obligations under the contract or a legal excuse for his nonperformance.

*Rollins*, 951 So.2d at 876.

> **1.     A Valid Contract Existed Between GMAC And The Real Party In Interest**

GMAC had a valid contract with Plaintiff's Predecessor in Interest, his mother, Agnes

Throm.  As discussed above in Section III.A., *supra*, Plaintiff is the sole person capable and

competent to bring this action on behalf of Agnes Throm and/or her estate.

The original contract was between Plaintiff's Predecessor in Interest and the Manning

Financial Group, Inc.  *See* Def. Br. at Ex. B.  The mortgage was assigned to GMAC subsequent

to closing.  *See* Compl. ¶¶ 1, 23.  Because the relevant contract is between Agnes Throm and

GMAC, and because Plaintiff is the appropriate party to bring an action for breach of that

contract, the first element of the claim is met.  Breach of contract claims may be brought by

successors in interest.  *See, e.g.*, *Camper v. Manning*, No. 2:11-cv-157, 2011 WL 2550820, at *3

(E.D. Va. June 27, 2011) ("At [decedent's] death, his cause of action passed to those who

succeeded to his rights, *i.e.* his personal representative.  Even still, [the decedent's] legatees or

distributees have standing to sue to recover personal assets of an estate when fraud, collusion, or

a refusal to sue on the part of the personal representative renders such action necessary for the

protection of ultimate rights accruing to them under a will or the statute of distribution." (internal

citations and quotations omitted)).

> **2.     GMAC Breached The Mortgage Contract**

Plaintiff has pleaded breach of the mortgage contract under two separate and independent

theories.  First, Defendant had no right to force-place flood insurance at all because the Lender

did not require flood insurance at closing and GMAC had no basis to change the requirements

during the term of the loan. *See* Compl. ¶¶ 24, 27-31, 70, 72 (setting forth the contract language, lack of insurance requirement at origination, and GMAC's breach by force-placing). Second, even if GMAC made a proper determination that the property required flood insurance and that GMAC had the power under the contract to change the insurance provisions, GMAC was expressly limited to requiring an amount of coverage "**to protect Lender's rights in the Property**." Ex. B to Def. Br. at ¶ 5. This means that the force-placed flood coverage amount could not exceed the balance of the mortgage. *See* Compl. ¶¶ 24, 27-31, 70, 72 (setting forth GMAC's breach by force-placing in excess of its "rights in the Property").[8]

Regarding the first theory, the originating lender determined – after obtaining a Flood Certification from Transamerica – that flood insurance was not required at the time of closing. *See* Compl. ¶¶ 24, 35 (discussing third-party flood certification determinations). Plaintiff's mortgage contract does not contain language conferring a contractual right for the Lender to adversely change insurance requirements during the term of the loan. *See* Ex. B to Def. Br. GMAC's force-placement of flood insurance was not authorized by the contract or federal law. GMAC even accepted the assignment of the loan subject to the flood certification and determination that flood insurance was not required on the property by the Lender. *See* Compl.

---

[8] If, based on industry norms, GMAC already sold its interest in the principal amount of the loan and booked the sale as income as a result of securitization (if it ever had any interest), its remaining interest would be as a loan "servicer" and it would have the ability to collect only a small percent (typically 0.25%) of the monthly payment. Yet, GMAC maintains that it can force-place any amount it chooses at any time without limitations. Even GMAC's own letters to Plaintiff and the mortgage contract at issue recognize that this is not the case. *See* Ex. B to Def. Br. at ¶ 5 ("… may, at Lender's option, obtain coverage to ***protect Lender's rights in the property***." (emphasis added)); Ex. D to Def. Br. at 4 ("This letter is to inform you that we have purchased insurance ***protecting our interest*** in your property as required by our mortgage guidelines and/or federal law." (emphasis added)); *id.* at 2 ("The Coverage Amount will not protect your equity in the property in the event of a loss.").

¶¶ 23-24 (noting assignment of the loan to GMAC after closing and the determination that flood insurance was not required at closing).

Second, even if GMAC made a proper determination that the property required flood insurance and that GMAC had the power under the contract to change the insurance provisions, GMAC was expressly limited in the amount of coverage it could force-place. The relevant provisions of the contract make the parties' agreement on flood insurance clear. Specifically, paragraph 5 of the contract, titled "Hazard or Property Insurance" provides:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires... ***If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage <u>to protect Lender's rights in the Property</u> in accordance with paragraph 7***.

Ex. B to Def. Br. (emphasis added).   In paragraph 7, the contract specifically distinguishes between the "Lender's rights in the Property" and the "value of the Property:"

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument …, then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.

*Id.* ¶ 7.

For paragraphs 5 and 7 to properly reconcile, the term "Lender's rights in the Property" must have the same definition to avoid a conflict. *See Lloyds Underwriters v. Netterstrom*, 17 So.3d 732, 735 (Fla. Ct. App. 2009) ("When a contract contains apparently conflicting clauses, we must interpret it in a manner that would reconcile the conflicting clauses, if possible." (citing *Harris v. School Bd. of Duval County*, 921 So.2d 725, 733 (Fla. App. 2006); *Dune I, Inc. v. Palms N. Owners Assoc., Inc.*, 605 So.2d 903, 905 (Fla. App. 1992); *Thrasher v. Arida*, 858 So.2d 1173, 1175 (Fla. App. 2003)).  Read together, paragraphs 5 and 7 make clear that the

"value of the Property" and GMAC's "rights in the Property" are two entirely distinct concepts. Paragraph 5 deals with "Property and Hazard Insurance" (as the title of the paragraph suggests). Limiting the lender's interest to its "rights in the Property" – the outstanding mortgage balance – is consistent with concepts of insurance law.  *See, e.g.*, *In re Newby*, 344 B.R. 597, 600 (Bkrtcy. W.D. Mo. 2006) ("Insurance treatises state unequivocally that the insurable interest of a mortgagee in property extends only to the amount of the mortgage debt and that a mortgagee purchasing at foreclosure subsequent to a loss has no right to any proceeds over the amount necessary to satisfy his or her mortgage"); *RGS Contractors, Inc. v. GC Builders, Inc.*, 348 F.3d 897, 900 (10th Cir. 2003) ("It is true that Appellee also had some interest in the builder's risk insurance proceeds.  As mortgagee, Appellee's interest was limited to the amount of mortgaged debt.  It is well settled that a mortgagee's recovery and insurable interest are limited to the amount of debt secured by the insured property"); *Aldridge v. Peak Property and Cas. Ins. Co.*, 873 So.2d 499, 500 (Fla. Ct. App. 2004) (interpreting the contractual term "insured's interest" to mean the mortgagee policy holder's outstanding balance).

Paragraph 7 deals with Lender's more general rights under the contract in the event of a breach of any covenant (*e.g.*, borrower allows the property to fall into disrepair) and thus the Lender has broader remedies "to pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property."  If there is a breach in the insurance requirement, the specific provision dealing with insurance – Paragraph 5 – controls.  *See White v. Harmon Glass Service of Florida, Inc.*, 316 So.2d 599 (Fla. Ct. App. 1975); 11 Fla. Jur. Contracts § 119 (1979) (noting and applying rule of contract construction that specific directions in the contract take precedence over the general); *Aetna Life Ins. Co. v. White*, 242 So.2d 771, 773 (Fla. Ct. App.1970) (where there are general and special provisions in a contract relating to the same

21

thing, the special provisions will govern in its construction over matters stated in general terms."). Accordingly, the plain reading of the contract supports Plaintiff's breach of contract claim.

Moreover, the parties' course of dealing also supports Plaintiff's breach of contract claim. From 2002 to 2006, the coverage that GMAC required on the property sufficient to protect its "rights in the Property" was limited to the outstanding balance on the mortgage. As this Court in *Wulf v. Bank of America* explained:

> In addition to the language of the mortgage, the conduct of the parties to the mortgage also leads to the conclusion that Plaintiff's claims are plausible. When Plaintiff entered into the mortgage contract with Fulton Bank, flood insurance in the amount of the outstanding balance was sufficient. Thus, the original party to the mortgage understood the document to require only flood insurance coverage to the extent of the mortgage. For all of these reasons, I find that, considering the language of the mortgage, dismissal of the breach of contract claim is inappropriate.

*Wulf v. Bank of America*, No. 10-5176, 2011 WL 2550628, at *6 (E.D. Pa. June 27, 2011) (McLaughlin, J.). The same analysis applies here.

GMAC's reliance on *Gibson v. Chase Home Fin., LLC*, is misplaced. No. 8:11-cv-1302, 2011 WL 6319401 (M.D. Fla. Dec. 16, 2011). *Gibson* is distinguishable because the plaintiff failed to allege which provision of the contract the defendant breached when force-placing insurance and the court found that the claim was not plausible since the defendant force-placed the minimum amount required by the NFIA. *Id.* at *4. Here, by contrast, Plaintiff has alleged that GMAC exceeded its rights under Paragraph 5 of the mortgage by force-placing flood insurance in excess of GMAC's "rights in the Property" and NFIA minimums. Thus, when GMAC force-placed coverage in excess of its "rights in the Property," GMAC breached the contract's terms.

22

GMAC also relies on two related Massachusetts cases against Bank of America and its servicing affiliate.  *See Lass v. Bank of America, N.A.*, No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 11, 2011); *Kolbe v. BAC Home Loans Servicing, L.P.*, No. 11-10312, 2011 WL 36653944 (D. Mass. Aug. 18, 2011).  *Lass* and *Kolbe*, decided by the same judge in the space of one week, are distinguishable.  Neither case involved a situation like this case where flood insurance was not necessary under the NFIA at closing.  Moreover, the cases are wrongly decided and squarely at odds with Judge McLaughlin and Magistrate Judge Hey's well-reasoned opinions in *Wulf v. Bank of America, N.A.*, No. 10-5176, 2011 WL 2550628 (E.D. Pa. June 27, 2011).  Indeed, *Kolbe* cites, but rejects without any discussion, the *Wulf* decision.  These decisions give banks limitless discretion to require flood insurance in any amount, at any time, and for any reason.  Thus, as servicers, banks have a perverse financial incentive to generate and collect as much fee income as possible.  Such income includes insurance commissions and kickbacks, as well as foreclosure and modification fees at the expense of its customers.  *See* Compl. ¶¶ 32, 50 (alleging GMAC took advantage of the kickbacks and commissions).  Such unbridled discretion leads to unjust results for consumers like Plaintiff.[9]

---

[9] Indeed, the perverse incentives available to servicers and the abuses engaged in by them have been documented.  *See, e.g.*, Eggert, Kurt, *Limiting Abuse and Opportunism by Mortgage Services*, 2004 Housing Policy Debate Vol. 15 Issue 3 (attached as Exhibit 12) (detailing servicer abuses, including improper foreclosure, fees, forced-placed insurance and use of escrow funds); Levitin and Twomey, *Mortgage Servicing*, 28 Yale J. Reg. 1, 44-45 (2011) ("Similarly, Kurt Eggert has noted a variety of abusive servicing practices, including "improper foreclosures or attempted foreclosures; imposition of improper fees, especially late fees; forced-placed insurance that is not required or called for; and misuse of escrow funds."  Servicers' ability to retain foreclosure-related fees has even led them to attempt to foreclose on properties when the homeowners are current on the mortgage or without attempting any sort of repayment plan. Eggert also notes that because servicers keep the late fees they charge, they may delay in working with borrowers to bring loans current.").

### 3.     GMAC's Breach Resulted In Damages To Plaintiff

GMAC's breach of the mortgage contract damaged Plaintiff due to the direct relationship between the insurance policy's coverage and premium.  In addition, the excessively priced insurance inflated Plaintiff's mother's monthly mortgage payment, leading GMAC to foreclose on the property due to the arrearages caused by GMAC's scheme. Compl. ¶¶ 34, 37.  This resulted in additional damages (and further inflated GMAC's fee income).  Compl. ¶ 38. Accordingly, Plaintiff has met this element of his breach of contract claim.

### 4.     GMAC's Argument That Plaintiff's Parents Failed To Perform Their Obligations Under The Contract Is Flawed

GMAC asks this Court to dismiss the action because Plaintiff's Predecessor in Interest did not maintain flood insurance on the property and therefore, GMAC asserts, failed to perform her obligations under the contract.  This argument is flawed.  First, as alleged in the Complaint, flood insurance was not required as determined by Transamerica and Manning Financial (and later confirmed by the Letter of Map Revision ("LOMR") issued by FEMA in 2010).  Compl. ¶¶ 26 & 35.  Second, even if flood insurance was required – and it was not – Plaintiff was not required to pay for excessive and unnecessary coverage that well-exceeded GMAC's "rights in the Property."  It is nonsensical for GMAC to assert that Plaintiff's Predecessor in Interest's failure to maintain excessive and unwarranted flood insurance permitted GMAC to do whatever it pleased.

### 5.     Defendant Breached The Covenant Of Good Faith And Fair Dealing

In addition to alleging an express breach of contract, Plaintiff's Complaint properly alleges that Defendant breached the implied covenant of good faith and fair dealing contained in every contract.  *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) ("Under Florida law, every contract contains an implied covenant of good faith and

24

fair dealing."); *Williams v. Wells Fargo Bank N.A.*, No. 1:11-cv-21233, Dkt. No. 76, at 6 (S.D. Fla. Sept. 19, 2011) (first opinion on Defendant's Motion to Dismiss in force-placed flood insurance case); *see also Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997).  "Nonetheless, a breach of the implied covenant 'is not an independent cause of action, but attaches to the performance of a specific contractual obligation.'"  *Williams*, Dkt. No. 76, at 6 (quoting *Centurion Air*, 420 F.3d at 1151).  "To allege a breach of the implied covenant, the party must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (citing *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097-98 (Fla. 1st DCA 1999)); *see also Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004) (outlining elements of claim).  Although a claimant cannot use the implied covenant of good faith and fair dealing to vary the terms of an express contract, where the contract confers the sole discretion on a party, that discretion is bound by the covenant of good faith.  *See Sepe v. City of Safety Harbor*, 761 So. 2d 1181, 1183 & 1185 (Fla. App. 2000) (rejecting argument that "sole discretion" terms are not bound by duty of good faith).

Here, even if GMAC's force-placement of flood insurance was permissible under the terms of the contract, GMAC was bound by the implied covenant of good faith and fair dealing in exercising its discretion.  *See Sepe*, 761 So. 2d at 1185 ("[S]ole discretion does not permit a party to make a discretionary decision that violates the covenant of good faith."); *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-98 (Fla. App. 1999) (holding that where a contract afforded a party "substantial discretion to promote that party's self-interest," a duty of good faith

applied).  In other words, GMAC is incorrect when it asserts that language in the loan agreement that states "this insurance shall be maintained in the amounts…and for the periods that Lender requires" gave it unbridled discretion to force-place insurance in any amount.  GMAC breached the duty of good faith and fair dealing by exercising its discretion to force-place insurance even though it knew it was not necessary, or that it was excessive.  *See* Compl. ¶¶ 24-25 (explaining that Transamerica was retained to make a determination whether the property required flood insurance under federal regulations and that the loan closed without any flood insurance); *see also Abels v. JPMorgan Chase Bank, N.A.*, 678 F.Supp.2d 1273, 1278-79 (S.D. Fla. 2009) (finding plaintiff adequately alleged that defendant breached the implied covenant of good faith and fair dealing by exercising its discretion under the contract "capriciously, in bad faith, and in contravention of the parties' reasonable expectation" by force-placing insurance purchased from its affiliate at excessive rates).

Moreover, the Complaint adequately alleges GMAC's bad faith breach of the duty of good faith and fair dealing because GMAC force-placed flood insurance in excess of its interest in the property.  *See* Compl. ¶¶ 3-4, 20, 22.  GMAC's force-placement of insurance policies on borrowers, including Plaintiff, that exceed GMAC's insurable interest in the property lacks good faith and is easily redressed.[10]  *See In re Smith*, 866 F.2d 576, 584-85 (3d Cir. 1988) ("[T]he

---

[10] The lender's "insurable interest" in a mortgaged property is limited to the mortgage balance. *See, e.g.*, *In re Newby*, 344 B.R. 597, 600 (Bkrtcy. W.D. Mo. 2006) ("Insurance treatises state unequivocally that the insurable interest of a mortgagee in property extends only to the amount of the mortgage debt and that a mortgagee purchasing at foreclosure subsequent to a loss has no right to any proceeds over the amount necessary to satisfy his or her mortgage"); *RGS Contractors, Inc. v. GC Builders, Inc.*, 348 F.3d 897, 900 (10th Cir. 2003) ("It is true that Appellee also had some interest in the builder's risk insurance proceeds. As mortgagee, Appellee's interest was limited to the amount of mortgaged debt.  It is well settled that a mortgagee's recovery and insurable interest are limited to the amount of debt secured by the insured property"); *Aldridge v. Peak Property and Cas. Ins. Co.*, 873 So.2d 499, 500 (Fla. App.

owner of a residential property mortgaged to a lending institution[] reasonably expect[s] that he or she will receive fair and above-board treatment in their dealings and that no undue advantage will be taken).  In *Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116 (N.D. Cal. 2010), the court rejected the defendant's argument that it had discretion under the mortgage agreement to unilaterally raise the flood insurance coverage requirement after closing in excess of the NFIA minimum.  The court found that the loan agreements in question did *not* authorize defendants to unilaterally impose or increase mandatory flood insurance requirements to whatever amounts they deemed proper.  *Id.* at 1128.  In addition, by force-placing insurance on Plaintiff's Predecessor in Interest without regard to the ability to pay, GMAC abused its discretion and took undue advantage resulting in foreclosure on the property and, ultimately, a $22,000 windfall for GMAC.  Compl. ¶ 38.

GMAC's reliance on *Hayes v. Wells Fargo Home Mortgage, Inc.*, and *Gibson v. Chase Home Finance*, LLC, is misplaced.  *See Hayes*, No. 06-1791, 2006 WL 3193743 (E.D. La. Oct. 31, 2006); *Gibson*, 2011 WL 6319401.  Both the *Hayes* and *Gibson* mortgage contracts did not limit the lender's ability to force-place to the lender's financial interest in the property.  *See Hayes*, 2006 WL 3193743, at *2-3; *Gibson*, 2011 WL 6319401, at *1.  Plaintiff's mortgage, by contrast, expressly limited GMAC's right to force-place to protecting GMAC's rights in the property.  *See* Ex. B to Def. Br., at ¶ 5.

Finally, even if flood insurance was required and the amount of insurance GMAC force-placed was proper, GMAC breached its duty of good faith and fair dealing by exercising its discretion to charge Plaintiff's Predecessor in Interest excessive premiums for the insurance.  *See*

---

(continued from previous page)
2004) (interpreting the contractual term "insured's interest" to mean the mortgagee policy holder's outstanding balance).

Compl. ¶ 9 ("The premiums GMAC … charged for this insurance were unconscionably and outrageously excessive, far in excess of any amount that could be considered 'reasonable.' … Even if the amount of coverage were proper, the insurance premiums were still excessively high, by the order of up to ten fold."); ¶ 22 ("GMAC charges these homeowners exorbitant and excessive insurance premiums that significantly and unfairly add to the homeowners' mortgage payments."); *see also Williams v. Wells Fargo Bank, N.A.*, No. 1:11-cv-21233, Dkt. No. 103 at 6-7 (S.D. Fla. September 19, 2011) (denying defendant mortgage bank's motion to dismiss breach of good faith count in similar force-place flood insurance case under Florida law).

GMAC simply ignores Plaintiff's allegations when it argues that "Plaintiff has not alleged any facts plausibly supporting a bad motive on the part of GMAC…."  Def. Br. at 18. Specifically, Plaintiff alleges that GMAC knew that the property did not require flood insurance as determined by Transamerica (and later confirmed by FEMA's LOMR), yet force-placed flood insurance anyway.  Compl. ¶¶ 24, 27-31, 35.  Moreover, Plaintiff alleges that GMAC received kickbacks from third parties it worked with to force-place insurance and thus was motivated to force-place unnecessary and excessive flood insurance.  *See* Compl. ¶ 41, 49-50, 55-56, 57. These allegations properly allege Defendant's bad faith.[11]

GMAC cannot defend against the breach of contract and breach of good faith and fair dealing claim by asserting that federal law required GMAC's action.  The NFIA requires minimum flood coverage ***equal to the lesser of***: (1) $250,000; (2) the outstanding balance of the loan; or (3) the replacement cost of the home.  *See* 42 U.S.C. §§ 4012a & 4013.  The NFIA does not give a lender a basis to force-place flood insurance in excess of the federal minimum

---

[11] GMAC's extraneous argument that Hurricane Katrina purportedly caused the inflated premiums is irrelevant to Plaintiff's bad faith allegations.  At best, GMAC raises factual issues outside of the Complaint that are inappropriate to consider in deciding this motion to dismiss. *See* Def. Br. at 5 n.4.

coverage requirement.  Plaintiff does not suggest – as Defendant wrongly asserts – that the NFIA prohibits lenders from requiring flood insurance in excess of the federal minimum coverage requirement.  *See* Def. Br. at 19-20.  Rather, Plaintiff asserts that neither federal law nor the contract provide a justification for force-placing flood insurance in excess of GMAC's interest in the property.  *See, e.g.*, Compl. ¶¶ 3, 5, 22, 48, 51, 53, 72, 73.

Defendant's reliance on *Gibson v. Chase Home Finance, LLC* is inapposite.  In *Gibson*, the court found that the lender force-placed the minimum flood insurance required under the NFIA.  *See* 2011 WL 6319401 at *4.  The court noted that the lender "was free to demand insurance over the [$250,000 NFIA] limit to protect [the lender's] investment in [plaintiff's] unit, but the math suggests that [the lender] attempted to require merely the NFIA minimum." *Id.*  By contrast, GMAC force-placed Plaintiff's Predecessor in Interest with not only more coverage than the NFIA minimum, but with more than three times the coverage required to protect GMAC's investment and interest in the property.

Here, the mortgage contract did not provide GMAC with the right to force-place flood insurance at all or did not provide GMAC with the right to force-place in excess of GMAC's insurable interest in the property.  Plaintiff has properly pleaded: 1) that flood insurance was not required at closing, Compl. ¶ 24; 2) that the contract did not provide the lender with the right to change flood insurance requirements after closing, Compl. ¶ 70; 3) that even if the lender had the right to change flood insurance requirements, the lender was limited to force-placing at most coverage sufficient to protect the lender's insurable interest, *see* Compl. ¶ 70; and 4) that GMAC nevertheless force-placed unnecessary and excessive flood insurance in an amount in excess of the principal balance of the mortgage.  Compl. ¶¶ 3, 20, 22.  Plaintiff's cause of action should be permitted to proceed.

### E.     THE COMPLAINT STATES A CLAIM UNDER TILA

The fundamental purpose of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq*., is to provide borrowers with clear and accurate disclosures of loan terms.  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  TILA aims "to assure that consumers are offered and receive residential mortgage loans on terms . . . that are understandable and not unfair, deceptive, or abusive."  15 U.S.C. § 1649b(2).  "Because it is a remedial statute, TILA should be construed liberally in favor of consumers."  *Williams v. Empire Funding Corp.*, 109 F. Supp. 2d 352, 357 (E.D. Pa. 2000) (citing *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir. 1990)).  GMAC violated TILA:  (1) by unilaterally and adversely changing the terms of Plaintiff's mortgage; and (2) by misrepresenting the statutory and contractual basis for the change in loan terms.  Compl. ¶ 85.

### 1.     GMAC Is Liable Under TILA As A Creditor

Defendant incorrectly argues that GMAC is not subject to TILA's disclosure requirements because Plaintiff was not the original party to the contract and thus is not a "consumer" under TILA, and because GMAC was not the original lender and thus is not a "creditor" under TILA.  These arguments are wrong for several reasons.  Plaintiff's Mortgage clearly provides that successors and assigns of both the Lender and the Borrower are bound by the agreement and that any benefits and rights shall inure to such successors and assigns.  *See* Ex. B to Def. Br., ¶ 12.  As such, GMAC cannot escape its duty to provide disclosures under TILA simply because GMAC and Plaintiff were not the original parties to the Mortgage. Plaintiff's Predecessor in Interest was clearly a "consumer" under TILA and Plaintiff has standing to pursue the TILA claim.  Additionally, TILA clearly applies to creditors, such as GMAC, who fail to make the proper subsequent disclosures as required by TILA when it amends a consumer's loan terms.

30

Additionally, Defendant's argument that GMAC is not a "creditor" and therefore cannot be sued for a violation of TILA is disingenuous.  GMAC was Plaintiff's and his Predecessor in Interest's "creditor" under TILA at the times it changed the terms of the credit agreement.[12] Defendant erroneously claims that Plaintiff's TILA claim fails because GMAC was not her creditor as described in 15 U.S.C. § 1602(f).  *See* Def. Br. at 23.  This argument also rests on the faulty premise that Plaintiff's TILA claim arose out of representations made at loan origination. At the time GMAC modified its flood insurance requirements for Plaintiff's Predecessor in Interest's Mortgage, it owned the loan and was the "creditor" or "lender."  The fact that GMAC did not initially extend credit to Plaintiff or his Predecessor in Interest is irrelevant.  As Magistrate Judge Hey noted in *Wulf*, where the plaintiff alleges "Defendant[] obtained flood insurance in breach of the mortgage, it is plausible that the inaccuracy of the original disclosures was caused by Defendant['s] departure from the mortgage documentation.  Thus, Plaintiff[] has stated a claim that [he] was entitled to new disclosures under TILA."  *Wulf*, 2011 WL 2550628, at *12.  After origination, GMAC made a misleading demand for additional insurance and this action altered the terms of the mortgage, creating a new loan obligation and triggering new TILA disclosures.  Therefore, GMAC is a proper TILA defendant.

### 2.      TILA Requires Disclosure Of Insurance Requirements And Premiums

GMAC violated TILA when it changed the terms of Plaintiff's mortgage and required

---

[12] Even if the appropriate time at which to determine "creditor" status was at closing of the Loan, GMAC remains a proper defendant under TILA as a voluntary assignee.  "A creditor's 'assignee' . . . may also be held liable for a creditor's TILA violations in loan transactions involving real property if the assignment is voluntary and the TILA violation at issue 'is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter.'"  *Roach v. Option One Mortgage Corp.*, 598 F. Supp. 2d 741, 750 (E.D. Va. 2009) (quoting 15 U.S.C. § 1641(e)(1)).  Here, the violation was a failure to disclose a change in Plaintiff's Predecessor in Interest's loan terms, as required by TILA, and GMAC voluntarily received assignment of the loan.  Thus, Defendant's conduct and status clearly indicate the type of liability foreseen under 15 U.S.C. § 1641.

insurance not authorized by the original mortgage documents, while misrepresenting the contractual and statutory basis for the change in terms. "A creditor may not change the terms of the extension of credit if such changes make the disclosures inaccurate, unless new disclosures are provided . . . ." 15 U.S.C. § 1639(a)(2)(A). TILA's implementing regulations, Regulation Z, mandate that lenders must "provide material disclosures to borrowers, including the finance charges associated with the loan." *Wulf v. Bank of Am., N.A.*, 2011 WL 2550628, *10 (E.D. Pa. 2011); *see also* 12 C.F.R. §§ 226.4, 226.17, 226.18. Premiums and other charges incurred for insurance to protect against loss or damage to the property "are considered part of the finance charge that must be disclosed." *Wulf*, 2011 WL 2550628, at *10 (citing 12 C.F.R. § 226.4(b)(8)). TILA also requires that lenders truthfully and accurately disclose the terms of the parties' legal obligation. *See Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002) ("TILA prohibits not only failures to disclose, but also false or misleading disclosures.").

Here, the mortgage authorized force-placing of flood insurance in an amount necessary to protect the Lender's "rights in the Property." Ex. B to Def. Br., ¶ 5. Defendant erroneously argues that this language gives GMAC "a contractual right to force-place flood insurance" at any exorbitant amount that GMAC chooses. Def. Br. at 25. GMAC violated TILA when it changed its flood insurance requirements and required flood insurance in amounts that neither federal law nor the mortgage contract authorize. Compl. ¶ 22. Defendant's argument ignores that GMAC unilaterally changed the terms of Plaintiff's loan and failed to provide the proper disclosures when it increased its flood insurance requirements.[13]

The Northern District of California addressed an identical situation involving virtually

---

[13] Indeed, this violation of TILA includes the initial imposition of flood insurance in 2002 (since flood insurance was never required by federal law, as determined at origination and confirmed by the LOMR) as well as GMAC's coverage increase above the outstanding balance on the loan after 2006.

identical mortgage language when it held that "any decision by [the defendant] to increase [the plaintiff's] minimum required flood insurance coverage . . . forms a plausible basis for . . . liability." *Hofstetter*, 751 F. Supp. 2d at 1127.  The *Hofstetter* court found that language similar to the mortgage here was insufficient to disclose that flood insurance requirements may change in the future, holding that "[i]f defendants intended for this language in its initial disclosure to reserve their right to impose a requirement of flood insurance at a later date . . . they should have disclosed . . . 'that specified changes will occur if a specific event takes place.'" *Id.* (citing 12 C.F.R. 226.5b(f)(3)(i)).[14]

GMAC incorrectly argues that flood insurance premiums are not subject to TILA's disclosure requirements.  Def. Br. at 25-26 (citing 12 C.F.R. § 226.4(d)(2)).  This argument is misplaced because premiums and other charges incurred for insurance to protect against loss or damage to the property "are considered part of the finance charge that must be disclosed."  *See Wulf*, 2011 WL 2550628, at *10 (citing 12 C.F.R. § 226.4(b)(8)).  The exclusion cited by GMAC, 12 C.F.R. § 226.4(d)(4), does not apply in this case because it excludes insurance premiums from the finance charge only at *origination*, not at a later date.  *See* 12 C.F.R. § 226.4(b) (discussing insurance premiums "written in connection with a credit transaction").  Defendant must provide disclosures here because Plaintiff's TILA claims arise from Defendant changing its flood insurance requirements after consummation of the mortgage transaction.

Plaintiff has alleged more than sufficient facts supporting his TILA claim.  *See, e.g.*, Compl. ¶¶ 24-31, 48, 51, 53, 78-91 (detailing GMAC's change in requirements, misleading notices, and representations as well as how GMAC meets the elements of Plaintiff's TILA

---

[14] Although *Hofstetter* addressed home equity lines of credit, the Eastern District of Pennsylvania in *Wulf*, addressing traditional mortgage loans, held that the court's reasoning applied to all TILA claims. *Wulf*, 2011 WL 2550628, at *11.  This Court should do the same.

claim).  As in *Hofstetter*, Defendant violated 15 U.S.C. § 1639(b)(2)(A) by unilaterally changing

the terms of Plaintiff's mortgage when it did not reserve this right in the initial disclosures and

when it did not provide proper subsequent disclosures.  The Court in *Wulf*, addressing this same

issue, noted that, at the very least, "[i]t would be premature at this stage to conclude as a matter

of law that TILA does not apply to Defendants' requirement that Plaintiff obtain more insurance

. . . ."  *See Wulf*, 2011 WL 2550628, at *11 n. 11.

### 3.    Plaintiff's TILA Claim Is Timely

Plaintiff's TILA claim is timely because his claim is based on GMAC's failure to make

proper subsequent disclosures, not failure to make loan origination disclosures.  Compl. ¶¶ 86–

87.  GMAC violated TILA by sending Plaintiff misleading form letters and force-placing

unnecessary and unwarranted flood insurance.  Compl. ¶ 85.  *Hofstetter* also addressed this issue,

and found that the plaintiffs stated a plausible and timely claim based on the defendant's

misleading "form letters" regarding flood insurance requirements.  *Hofstetter*, 751 F. Supp. 2d at

1123–24. The statute of limitations for Plaintiff's TILA claims did not begin to run, or should be

equitably tolled, until such time that he had a reasonable opportunity to discover GMAC's

violations.  Compl. ¶ 87.

The doctrine of equitable tolling saves a TILA claim "to prevent unjust results."  *Wise v.*

*Mortgage Lenders Network USA, Inc.*, 420 F. Supp. 2d 389, 393–94 (E.D. Pa. 2006); *see also*

*Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3d Cir. 1998) (TILA is subject to equitable

tolling).  "Allowing lenders to violate TILA, but avoid liability if they successfully concealed the

violation from the debtor for a year, would undermine the core remedial purpose of TILA."

*Ramadan*, 156 F.3d at 502.  Dismissal of a TILA claim at this stage is only appropriate "if the

assertions of the complaint, read with the required liberality, would not permit the plaintiff to

prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

GMAC's flood insurance notices misrepresented that federal law required the higher flood insurance coverage sought by GMAC, when in fact, this was not true. *See Hofstetter*, 751 F. Supp. 2d at 1126–28. GMAC's actions prevented Plaintiff from discovering that GMAC - not federal law - required the excess flood insurance coverage. By representing that federal law mandated the force-placement of flood insurance, GMAC represented the express terms of the contract to be irrelevant thereby concealing the wrongful conduct. This Court should apply equitable tolling and allow Plaintiff's TILA claim at this time because strict application of the TILA statute of limitations would be inequitable in light of GMAC's misrepresentations. Based on the allegations in the Complaint, Plaintiff should be provided with the opportunity to prove his claims.

F.      **THE COMPLAINT STATES A CLAIM FOR CONVERSION**

Defendant incorrectly asserts that Plaintiff's claim for conversion should be dismissed because it is barred by the economic loss rule. Def. Br. at 31-33. The economic loss rule in Florida can bar a claim where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract. *Tardif v. People for the Ethical Treatment of Animals*, No. 09-cv-537, 2011 U.S. Dist. LEXIS 128092, at *18-19 (M.D. Fla. Nov. 4, 2011); *Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216, 1223 (Fla. 2010). However, the economic loss rule does "not prevent the bringing of an action and recovery for intentional torts, such as, fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent." *Tardiff*, 2011 U.S. Dist. LEXIS 128092; *Curd*, 39 So.3d. at 1223 n.4. Thus, under Florida law, the economic loss doctrine does not bar claims for conversion where a victim

satisfies the elements of an intentional tort.  Here, as set forth below, Plaintiff's complaint meets

that burden by satisfying the elements of the intentional tort of conversion.

Plaintiff's allegations satisfy the elements of a claim for conversion under Florida law:

"(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent

with his ownership therein."  *Estetique Inc. USA v. Xpamed LLC*, No. 11-CIV-61740, 2011 U.S.

Dist. LEXIS 104427, at *28 (S.D. Fla. Sept. 14, 2011); *Warshall v. Price*, 629 So.2d 903, 904

(Fla. 4th DCA 1993); *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990).

The first element of conversion, an act of dominion wrongfully asserted, is clearly

satisfied by Plaintiff's allegations.  Plaintiff alleges that GMAC, through its scheme to force-

place insurance, intentionally and wrongfully asserted dominion over Plaintiff's funds.  Compl.

¶¶ 27-32.  GMAC wrongfully force-placed the insurance and asserted dominion over Plaintiff's

escrow funds to pay the premiums.  *Id*.  In addition, a conversion claim for money requires proof

that the funds are specific and identifiable.  *Allen v. Gordon*, 429 So. 2d 369 (Fla. 1st DCA

1983).  In this case the funds are easily identifiable as the escalating premiums of the force-

placed flood insurance.  Thus, Plaintiff satisfies the first element for the claim of conversion.

The second element of conversion is satisfied by Plaintiff's allegations that GMAC

exercised dominion over Plaintiff's or his Predecessor in Interest's funds.  Here, GMAC does not

dispute that it took funds as a result of the force-placed insurance.  Moreover, the Complaint

clearly alleges that GMAC took possession of Plaintiff's or his Predecessor in Interest's money.

*See, e.g.*, Compl. ¶ 30 ("GMAC then doubled the 2008-2009 annual premium, forcing Plaintiff

to pay $5,882.18 for his flood insurance policy.").  Thus, by alleging that GMAC took Plaintiff's

money to pay the force-placed insurance premiums, Plaintiff satisfies the second element of a

conversion claim under Florida law.

Finally, the third element of conversion is properly alleged because GMAC took money that should have remained in the possession of Plaintiff.  GMAC's scheme interfered with Plaintiff's ownership.  *See, e.g.*, Compl. ¶ 34 ("GMAC forced Plaintiff to pay a monthly amount for unnecessary flood insurance alone that was almost ***double*** the monthly mortgage amount.").  In the absence of the illegal scheme, Plaintiff would have retained rightful possession of the funds.  Thus, Plaintiff satisfies all three elements of a conversion claim under Florida law.

### G.      THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT

Plaintiff has adequately alleged an unjust enrichment claim.  To state a claim for unjust enrichment, a plaintiff must show:

> (1) plaintiff has conferred [a] benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Citadel Commerce Corp. v. Cook Systems, LLC*, No. 8:08-cv-1923-T-33TGW, 2009 WL 1230067, at *4 (M.D. Fla. May 5, 2009).

Plaintiff's complaint clearly sets forth each element.  Plaintiff conferred a benefit on GMAC by paying for excessive, unwarranted and unreasonably priced flood insurance and GMAC had knowledge thereof since it charged those premiums.  *See* Compl. ¶¶ 3, 29-31, 42, 54, 112, 114.  GMAC voluntarily accepted those premiums and has retained them.  *See id.*  Finally, it would be inequitable under the circumstances for GMAC to retain the benefit because, as Plaintiff alleges:  (a) the premiums charged were "excessively high, by the order of up to ten fold", "far in excess of any amount that could be considered reasonable,"  Compl. ¶¶ 9, 49; (b) SWBC and WNC – entities that brokered the force-placed flood insurance – pay a kickback or commission to GMAC to be able to provide force-place policies at unreasonable rates, Compl. ¶¶ 6-8, 41, 113; (c) these kickbacks or commissions constitute at least part of the reason for the

exorbitant cost of the force-placed insurance, Compl. ¶¶ 32, 50, 112; and (d) the excessively high premiums only benefit GMAC and its affiliates because they increase premiums, commission and interest revenues.  Compl. ¶ 58.

GMAC does not seriously attack the adequacy of Plaintiff's pleading, arguing instead that the claim is deficient as a matter of law for three reasons.  As discussed below, GMAC's arguments have all been previously rejected by courts interpreting Florida unjust enrichment law.

First, GMAC argues that "a claim for unjust enrichment, a form of equitable relief, cannot stand if an express contract exists."  Def. Br. at 34.  This argument ignores the basic tenets of pleading alternative or even inconsistent claims under Federal Rules of Civil Procedure Rule 8(d)(2) and (d)(3).  *See Manicini Enterprises, Inc. v. American Exp. Co.*, 236 F.R.D. 695, 698–99 (S.D. Fla. 2006).  As the court in *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F.Supp.2d 1213, 1229 (S.D. Fla. 2009) explained, "[w]hile [plaintiff] can only recover once for the same actual damages, regardless of the number of alternative theories presented, it is not barred against pleading unjust enrichment simply because it has also plead breach of contract in Count I."  The court reasoned that "[u]ntil an express contract is proven, a motion to dismiss a claim for ... unjust enrichment on these grounds is premature."  *Id.*; *Mancini*, 236 F.R.D. at 699 (same); *JI-EE Industry Co., Ltd. v. Paragon Metals, Inc.*, No. 09-81590-CIV, 2010 WL 1141103, at *1  (S.D. Fla. March 23, 2010) (same).

Simultaneously pleading breach of contract and unjust enrichment claims is particularly appropriate "in the face of uncertainty as to the existence of a contract or, perhaps, uncertainty as to whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the parties."  *Donnelly v. Circuit City Stores, Inc.*, 2007 WL 896337, at *3 (M.D. Fla. Mar. 22, 2007); *In re Checking Account Overdraft Litigation*, 694 F.Supp.2d 1302, 1321 (S.D.

Fla. 2010) ("Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory."); *Abels v. JPMorgan Chase Bank, N.A.*, 678 F.Supp.2d 1273, 1279 (S.D. Fla. 2009) (finding that existence of mortgage contract did not preclude unjust enrichment claim based on force placed insurance because plaintiff is allowed to plead in the alternative, reasoning that "Defendant has not conceded that that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under the unjust enrichment count.").  That is precisely the situation here where GMAC argues that it "had no lending relationship with Plaintiff during the period GMAC force-placed flood insurance on the subject Florida property," that "plaintiff was a stranger to GMAC" and he cannot assert a claim based on the mortgage contract.  Def. Br. at 1.  Accordingly, as GMAC admits by questioning the existence of a mortgage contract between it and Plaintiff at the time it force-placed insurance, Plaintiff's unjust enrichment claim should not be dismissed.[15]

Defendant next argues that there is nothing "unjust" about its collection of exorbitant premiums because it "acted as the contract authorized it to act" and "Plaintiff's predecessors in interest forced GMAC to purchase insurance when they failed to do so on their own and after being given notice that they had the right to do so through their own agent at significantly lower

---

[15] *Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1309 (S.D. Fla. 2009) and *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F.Supp.2d 1325 (S.D. Fla. 2010) cited by GMAC for the proposition that Plaintiff cannot state an unjust enrichment claim when there is an express contract are inapposite.  First, unlike here, there was no dispute in either *Reese* or *Degirmenci* between the parties as to who were the parties to the express contract.  Second, the plaintiff relied on the express terms of the contract in order to make out his unjust enrichment claims. Here, Plaintiff's unjust enrichment claim is premised on GMAC's conduct separate and apart from GMAC's obligations under the contract.

cost." Def. Br. at 34-35, n14. This identical argument was rejected in *Williams v. Wells Fargo Bank, N.A.*, 11-21233-CV, 2011 WL 4368980 (Sept. 19, 2011 S.D. Fla.) – a case Defendant surprisingly fails to cite:

> First and WFI's argument is that the unjust-enrichment claim fails because the force-placed insurance process was provided for in the Plaintiffs' mortgage contracts, and Plaintiffs could have avoided that process by keeping their insurance current. This argument fails to persuade.
>
> Plaintiffs do not allege that the force-placed insurance process, in and of itself, supports a claim for unjust enrichment. Instead, Plaintiffs allege that Defendants' manipulation of that process, in order to maximize their profits, supports the unjust-enrichment claim. (See Am. Compl. ¶ 35). The fact that Plaintiffs, had they maintained insurance coverage on their properties, could have avoided being subject to this manipulation does not render the claim insufficient, nor would such an argument serve the principles of equity and justice that the unjust-enrichment claim is intended to promote.

*Id.* at *10. As in *Williams*, Plaintiff's unjust enrichment claim focuses on Defendant's manipulation of the force-placed insurance process in order to maximize fees and commissions through its kickback scheme with its affiliates – not whether Defendant had the right or ability to force-place flood insurance in the first place.

Finally, GMAC argues that Plaintiff's unjust enrichment claim must be dismissed because it conferred a benefit on Plaintiff by using "the funds it received to pay for the premium on the forced-placed insurance." Def. Br. at 35. The *Williams* court also squarely rejected this argument because it ignores the fact that the crux of the unjust enrichment claim is that Plaintiff paid grossly excessive amounts for the insurance:

> [Defendants] assert the unjust-enrichment claim fails because Plaintiffs admit they received a benefit for the premiums that were charged, and thus adequate consideration was given for any benefit received. (See QBE Mot. 7–8; WF Mot. 12). This argument necessarily fails. **The entire crux of Plaintiffs' Amended Complaint is that any consideration they received for the benefit conferred on Defendants was grossly inadequate. They allege the insurance policies**

were "**unreasonably, uncompetitively, and excessively priced**" for the sole purpose of maximizing profits and kickbacks to Defendants. (Am.Compl.¶ 32).   Whether the consideration received was in fact adequate is not an appropriate question for the Court to resolve at this stage.

*Williams*, 2011 WL 4368980 at *11 (emphasis added).

As in *Williams*, Plaintiff's allegations that GMAC charged excessively high and unreasonable rates as a result of its kick-back scheme clearly place the "adequacy" of any purported benefit Plaintiff received at issue.   GMAC's motion to dismiss Plaintiff's unjust enrichment claim based on adequate consideration should likewise be denied here.[16]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, GMAC's motion to dismiss should be denied.   To the extent the Court grants GMAC's Motion, Plaintiff respectfully requests the opportunity to amend and correct whatever deficiencies the Court finds.   It is well-settled that leave to amend "shall be freely given when justice so requires."   *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006).   Plaintiff has engaged in no undue delay or bad faith.   *See Reszler v. Travelers Prop. Cas. Ins.*, No. 06-586, 2007 WL 1035024, *4 (D.N.J. Apr. 3, 2007).   Furthermore, leave to amend would not prejudice GMAC.   *Id.*

---

[16] *N.G.L. Travel Associates v. Celebrity Cruises, Inc.*, 764 So.2d 672, 675 (Fla. App. Ct. 2000) is distinguishable from the situation here because the plaintiffs in *N.G.L.* failed to allege that they paid an excessive or inflated amount for the services that the defendant provided.

41

Dated: February 3, 2012                    Respectfully submitted,


                                           ___/s/ Shanon J. Carson_____
                                           Eric L. Cramer, Atty ID # 69289
                                           Shanon J. Carson, Atty ID # 85957
                                           Patrick F. Madden, Atty ID # 309991
                                           BERGER & MONTAGUE, P.C.
                                           1622 Locust Street
                                           Philadelphia, PA  19103
                                           Telephone: (215) 875-4656
                                           Facsimile: (215) 875-4604

                                           Brett Cebulash
                                           Kevin S. Landau
                                           TAUS, CEBULASH & LANDAU, LLP
                                           80 Maiden Lane, Suite 1204
                                           New York, NY 10038
                                           Telephone: (212) 931-0704
                                           Facsimile: (212) 931-0703


                                           Kendall S. Zylstra
                                           FARUQI & FARUQI, LLP
                                           101 Greenwood Avenue
                                           Suite 600
                                           Jenkintown, PA  19046
                                           Telephone: (215) 277-5770
                                           Facsimile: (215) 277-5771

                                           David M. Taus
                                           DEVERO TAUS LLC
                                           211 Somerville Road, Suite B
                                           Bedminster, New Jersey 07921
                                           Telephone:  (908) 375-8142
                                           Facsimile:  (908) 375-8151

                                           Brent Walker
                                           CARTER WALKER PLLC
                                           2171 West Main Street, Suite 200
                                           Cabot, AR 72023
                                           Telephone: (501) 605-1346
                                           Facsimile: (501) 605-1348

Steven A. Owings
OWINGS LAW FIRM
1400 Brookwood
Little Rock, AR 72202
Telephone:  (501) 661-9999
Facsimile: (501) 661-8393

*Attorneys for Plaintiff Dennis A. Throm*