UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DENNIS A. THROM, individually and on behalf of all others similarly situated,

                Plaintiff,

v.

GMAC MORTGAGE, LLC,

                Defendant.

Case No.: 2:11-cv-06813

### REPLY BRIEF IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANT GMAC MORTGAGE, LLC

Henry F. Reichner
Joe N. Nguyen
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone No. (215) 851-8100
Facsimile No. (215) 851-1420

*Attorneys for Defendant
GMAC Mortgage, LLC*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT.........................................................................................................................1

    A. The Florida Probate Filings Establish Plaintiff's Lack Of Standing ........................1

    B. The Assumption And Modification Agreement Bars Plaintiff's Claims .................2

    C. The Voluntary Payment Rule Bars Plaintiff's Claims..............................................3

    D. Plaintiff's Arguments Are Flatly Contradicted By The Cited Documents...............4

    E. The TILA Claim Still Fails....................................................................................10

    F. The Conversion Claim Still Fails ..........................................................................12

    G. The Unjust Enrichment Claim Still Fails ..............................................................13

III. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Abels v. JP Morgan Chase Bank, N.A.*,
679 F. Supp. 2d 1273 (S.D. Fla. 2009) ............................................................................ 9

*Abrevaya v. VW Credit Leasing, Ltd.*,
No. 09-00521, 2009 WL 8466868 (E.D. Pa. Jul. 22, 2009) ............................................ 4

*Adams v. GMAC Mortg. Corp. of Pa.*,
No. 94-3233, 1994 WL 702639 (N.D. Ill. Dec. 14, 1994) ............................................ 12

*Bowmer v. NovaStar Mortg. Funding Trust, Series 2006-1*,
711 F. Supp. 2d 390 (E.D. Pa. 2010) ............................................................................ 12

*Bruce Const. Corp. v. Fed. Realty Corp.*,
104 Fla. 93 (1932) ........................................................................................................... 3

*Custer v. Homeside Lending, Inc.*,
858 So.2d 233 (Ala. 2003) ..................................................................................... 5, 6, 7

*DDA Family Ltd. P'ship v. City of Moab*,
No. 04-392, 2006 WL 1409124 (D. Utah May 19, 2006) .............................................. 5

*Degirmenci v. Sapphire-Fort Lauderdale, LLLP*,
No. 09-60089-CIV, 693 F. Supp. 2d 1325 (S.D. Fla. Feb. 1, 2010) ............................ 14

*Doss v. Cuevas*,
985 So. 2d 740 (La. App. 1st Cir. 2008) ........................................................................ 9

*Doyle v. City of Marengo*,
783 N.E.2d 1052 (Ill. App. 2 Dist. 1999) ....................................................................... 5

*Elmore v. Broward County*,
507 So.2d 1220 (Fla. Dist. Ct. App. 1987) ..................................................................... 3

*Fred's Modern Contracting, Inc. v. Horsham T'ship*,
No. 02-918, 2004 WL 620060 (E.D. Pa. Mar. 29, 2004) ............................................... 5

*Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*,
944 F. Supp. 1538 (M.D. Fla. 2008) ............................................................................ 13

*Grinke v. Countrywide Home Loans, Inc.*,
No. 08-23382, 2009 WL 2588746 (S.D. Fla. Aug. 24, 2009) ...................................... 11

*Hayes v. Wells Fargo Home Mortg.*,
No. 06-1791, 2006 WL 3193743 (E.D. La. Oct. 31, 2006) ............................................ 5

*Hofstetter v. Chase Home Fin., LLC*,
751 F. Supp. 2d 1116 (N.D. Cal. 2011) .................................................................. 10, 12

*Hurt v. Leatherby Ins. Co.*,
380 So.2d 432 (Fla. 1908) .............................................................................................. 3

*In re Newby*,
344 B.R. 597 (Bkrtcy. W.D. Mo. 2006) ......................................................................... 8

*JI-EE Indus. Co., Ltd. v. Paragon Metals, Inc.*,
   No. 09-81590, 2010 WL 1141103 (S.D. Fla. Mar. 23, 2010) .................................................. 14

*Jones v. ABN AMRO Mortg. Group, Inc.*,
   551 F. Supp. 2d 400 (E.D. Pa. 2008) ......................................................................................... 4

*Kee v. Nat'l Reserve Life Ins. Co.*,
   918 F.2d 1538 (11th Cir. 1990) ............................................................................................... 13

*Kolbe v. BAC Home Loans Servicing, L.P.*,
   No. 11-10312, 2011 WL 3665394 (D. Mass. Aug. 18, 2011) ............................................. 5, 7

*Lass v. Bank of America, N.A.*,
   No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 11, 2011) ............................................... 12

*Lloyds Underwriters v. Netterstrom*,
   17 So.3d 732 (Fla. App. 2009) .................................................................................................. 8

*Meyer v. Ameriquest Mortg. Co.*,
   342 F.3d 899 (9th Cir. 2003) ................................................................................................... 11

*Nicholson v. Countrywide Home Loans*,
   No. 107-cv-03288, 2008 WL 731032 (N.D. Ohio Jan. 7, 2008) ............................................. 9

*Orchard Hill Const. LLC v. Fed. Emerg. Mngmt.*,
   No. 99-5756, 2001 WL 185188 (N.D. Ill., Feb. 26, 2001) ....................................................... 5

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
   38 F.3d 1380 (3d Cir. 1994) .................................................................................................... 11

*Pailes v. HSBC Mortg. Servs.*,
   No. 10-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011) .................................................... 6

*Pauley v. Bank One Colorado Corp.*,
   205 B.R. 272 (D. Colo. 1997) .................................................................................................. 12

*PNC Bank, N.A. v. Colonial Bank, N.A.*,
   No. 08-611, 2008 WL 2917639 (M.D. Fla. July 24, 2008) .................................................... 13

*Porter v. Nationscredit Cons. Discount Co.*,
   No. 03-03768, 2007 WL 30117 (E.D. Pa. Jan. 3, 2007) ........................................................ 12

*Reese v. JPMorgan Chase & Co.*,
   686 F. Supp. 2d 1291 (S.D. Fla. Oct. 15, 2009) ..................................................................... 14

*Rossman v. Fleet Bank, N.A.*,
   280 F.3d 384 (3d Cir. 2002) .................................................................................................... 12

*Sepe v. City of Safety Harbor*,
   761 So. 2d 1181 (Fla. Dist. Ct. App. 2000) .............................................................................. 9

*Shibata v. Lim*,
   133 F. Supp. 2d 1311 (M.D. Fla. 2000) .................................................................................... 9

*Williams v. Wells Fargo Bank, N.A.*,
   No. 11-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ............................ 10, 13, 14, 15

*Williams v. Wells Fargo Bank, N.A.*,
  No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ................................................. 10

*Wulf v. Bank of America, N.A.*,
  798 F. Supp. 586 (E.D. Pa. 2011) ................................................................................. 8, 12

**Statutes**

15 U.S.C. §1602 ........................................................................................................................ 11

42 U.S.C. § 4012a(f) .................................................................................................................... 9

Fla. Stat. § 735.201 ...................................................................................................................... 1

Fla. Stat. § 735.203(1) ................................................................................................................. 1

**Regulations**

12 C.F.R. Part 226, Supp. I, § 17(e) ........................................................................................... 12

44 C.F.R. § 72.2 ........................................................................................................................... 5

**Rules**

Fla. Prob. R. 5.530(a)(8) .............................................................................................................. 1

Fla. Prob. R. 5.530(d) .................................................................................................................. 1

**Other Authorities**

FEMA Mandatory Purchase of Flood Insurance Guidelines (September 2007) ...................... 7, 9

I.  **INTRODUCTION**

The Court should dismiss the Complaint because Plaintiff has failed to give this Court any good reason to entertain his purported claims against GMAC.

II.  **ARGUMENT**

A.  **The Florida Probate Filings Establish Plaintiff's Lack Of Standing**

Plaintiff had the burden of proving standing and failed miserably. Although not alleged in the Complaint, Plaintiff now claims that his standing to assert the claims of his Predecessors in Interest stems from his status as a "*de facto*" representative of his mother's estate and her heir. However, an examination of the probate court filings that he has now provided relating to the Estate and its summary administration in fact only confirms that Plaintiff has no standing under the theory he now espouses. *See* Ex. 11 to Pl. Opp.

Florida has two types of probate administration: formal administration and summary administration. The purpose of summary administration is to streamline the process and immediately distribute a decedent's specifically identified assets to her heirs where the value of the estate, less the value of property exempt from creditor claims, is less than $75,000 and all creditors claims have been resolved or addressed. Fla. Stat. § 735.201. A petition for summary administration may be filed by any beneficiary. Fla. Stat. § 735.203(1). Florida requires, however, that the petition "shall contain ... a description of all assets in the estate and the estimated value of each, and a separate description of any protected homestead and exempt property." Fla. Prob. R. 5.530(a)(8). "If the court determines that the decedent's estate qualifies for summary administration, it shall enter an order distributing the probate assets and specifically designating the person to whom each asset is to be distributed." Fla. Prob. R. 5.530(d).

Plaintiff filed the Petition for Summary Administration as his mother's beneficiary and represented in the Petition that "a complete list of the assets" in the Estate consisted of two (2)

things only: the Property and its contents. *See* Ex. 11 to Pl. Opp. Based on that representation, and the representation that there were no non-exempt assets available for general creditor claims, the Probate Division entered an Order of Summary Administration distributing those two assets – and only those two assets – to Plaintiff. *Id.* The Petition did not disclose any non-exempt asset in the form of a cause of action against GMAC and the Probate Division did not distribute any such asset to Plaintiff and no creditor was made aware of the existence of any such non-exempt asset. *Id.* Further, Plaintiff was never appointed as personal representative of the Estate and, by definition, there is no ongoing administration of the Estate. *Id.*

In short, the probate papers do not satisfy Plaintiff's burden of showing that this Court has jurisdiction over this action; rather, they establish that Plaintiff has no standing to assert any purported claim of his Predecessors in Interest, whether as a "*de facto*" representative of his mother's estate or as her heir. The Complaint should be dismissed on this basis.

### B. The Assumption And Modification Agreement Bars Plaintiff's Claims

Plaintiff tries to confuse the issue of whether the Complaint should also be dismissed because Plaintiff entered into the Assumption and Modification Agreement by arguing that there is no "release" in that documentation. This is a red herring. The point is that Plaintiff admits he entered into a binding contract with GMAC that specifically addressed, changed, and set the principal and escrow balances – not to mention the provisions extending the term of the loan by twenty years and reducing both the interest rate and monthly payment by over 50%. There was no need for a release – basic contract, estoppel, and waiver principals cited in GMAC's opening brief preclude Plaintiff from reneging on the agreement he agreed to and induced GMAC to approve. Plaintiff simply cannot accept the benefits of the contract and at same time renounce, or repudiate, the terms to which he agreed with respect to the loan and escrow balances.

Plaintiff's case cites do not change this basic legal principle. Indeed, when one reads the entire sentence Plaintiff partially quotes from *Bruce Const. Corp. v. Fed. Realty Corp.*, 104 Fla. 93, 100 (1932), one realizes that case actually supports GMAC's argument and dismissal of the Complaint: Plaintiff omits the balance of the sentence where the Florida court goes on to say "the parties will not be construed as having waived the right to a lien ***unless they expressly agree to such terms that are inconsistent with the existence of such right***." *Id.* (emphasis added). This is precisely what Plaintiff did here when he agreed to the modified principal balance and escrow amount that included the disputed charges and amounts. Simply stated, Plaintiff expressly agreed to terms that are inconsistent with the existence of the claim he now makes – whether that claim is based on circumstances involving his Predecessors in Interest or the circumstances allegedly causing him to enter into the Assumption and Modification Agreement.[1] The Court should dismiss the Complaint on this basis.[2]

### C. The Voluntary Payment Rule Bars Plaintiff's Claims

Plaintiff's principal argument against application of the voluntary payment rule is that his parents' payments – and his own entry into the Assumption and Modification Agreement – were "coerced" and made under duress because, if they had not been not made, a foreclosure action

---

[1] Plaintiff suggests that he has his own individual claims because he was "forced" to enter into the Assumption and Modification Agreement because of the threat of foreclosure and, as a result, lost $22,000 worth of alleged equity in the Property he had inherited. *See* Pl. Opp. at 3. However, Plaintiff is not seeking to rescind that agreement.

[2] Plaintiff's other case cites add nothing. *Hurt v. Leatherby Ins. Co.*, 380 So.2d 432 (Fla. 1908), stands for the unremarkable proposition that where there is an express release, the courts will not look past its plain language. *Elmore v. Broward County*, 507 So.2d 1220 (Fla. Dist. Ct. App. 1987), has no application here as GMAC does not contend that the Mortgage was cancelled. GMAC is not, as Plaintiff suggests, taking inconsistent positions. GMAC agrees that other provisions of the agreement remained in force – GMAC's argument is that the specific terms that did change are inconsistent with the existence of the claim Plaintiff makes here and that claim is accordingly subject to dismissal.

could eventually follow.[3] This Court has, of course, rejected similar arguments made by borrowers. *Abrevaya v. VW Credit Leasing, Ltd.*, No. 09-00521, 2009 WL 8466868, at *3 (E.D. Pa. Jul. 22, 2009) (payment made on account of fear of future harm "is not an action under duress"). The cases cited by Plaintiff do not change this result inasmuch as none of them even discuss the voluntary payment rule.[4] The Court should dismiss the Complaint pursuant to the voluntary payment rule.

### D. Plaintiff's Arguments Are Flatly Contradicted By The Cited Documents

Notwithstanding Plaintiff's claim to the contrary, the Original Flood Certification did in fact certify that the property was in a flood plain and that flood insurance was required. *See* Original Flood Certification attached hereto as "**Exhibit K**."[5] Further, Plaintiff's assertion that FEMA's Letter of Map Revision ("LOMR") shows that flood insurance was not required at closing is directly contradicted by the language of the LOMR itself and the purpose for which LOMRs are issued. A LOMR is "FEMA's modification to an effective Flood Insurance Rate

---

[3] With regard to his entry into the Assumption and Modification Agreement, it is undisputed that GMAC would have been well within its contract rights to have refused to the assumption and could have proceeded to foreclose solely because the Property had been transferred and was no longer in the name of any of the original borrowers. *See* Mortgage, p. 6, § 17.

[4] Plaintiff's argument about "excessive" pricing is a red herring for the simple reason that Plaintiff's argument is that *no* flood insurance was required.

[5] The Original Flood Certificate provides:

"IS BUILDING/MOBILE HOME IN SPECIAL FLOOD HAZARD AREA…YES."

"If yes, flood insurance is required by the Flood Disaster Protection Act of 1973."

Citing to paragraphs 24 and 35 of his Complaint, Plaintiff says the Original Flood Certification did not require insurance. *See* Pl. Opp., at 3, 6, and 19. As it happens, the cited paragraphs do not actually allege this. *See* Compl., ¶¶ 24, 35. More to the point, this assertion is flatly contradicted by the Original Flood Certification. *See Jones v. ABN AMRO Mortg. Group, Inc.*, 551 F. Supp. 2d 400, 409 (E.D. Pa. 2008) (where there is disparity between a written instrument and a pleading, the written instrument will control).

Map (FIRM), or Flood Boundary and Floodway Map (FBFM), or both....The LOMR officially revises the FIRM or FBFM ...." 44 C.F.R. § 72.2. [6] Here, the LOMR makes clear that "[t]his document revised the effective NFIP map to *remove* the subject property from the SFHA ... therefore, the Federal mandatory flood insurance does not apply." *See* LOMR (emphasis added). Indeed, the LOMR only removed some of the Property from the flood zone. *See* LOMR ("PORTIONS REMAIN IN THE SFHA"). Therefore, the LOMR actually confirms that the Property was in an SFHA at closing and until June, 24 2010.[7]

Further, the courts in *Custer v. Homeside Lending, Inc.* 858 So.2d 233, 246 (Ala. 2003); *Hayes v. Wells Fargo Home Mortg.*, No. 06-1791, 2006 WL 3193743, at *4 (E.D. La. Oct. 31, 2006), and *Kolbe v. BAC Home Loans Servicing, L.P.*, No. 11-10312, 2011 WL 3665394, at *3 (D. Mass. Aug. 18, 2011), have already rejected the same argument Plaintiff makes here about GMAC being bound somehow by the fact that flood insurance was not purchased on day one. For instance, in *Custer,* the original lender did not require flood insurance; however, after the defendant purchased the loan, it subsequently required insurance coverage. When the borrower

---

[6] In other words, a LOMR is FEMA's official *removal* of a property from a special flood hazard area ("SFHA"). *Fred's Modern Contracting, Inc. v. Horsham T'ship*, No. 02-918, 2004 WL 620060, at *5 (E.D. Pa. Mar. 29, 2004). *See also DDA Family Ltd. P'ship v. City of Moab*, No. 04-392, 2006 WL 1409124, at * 3 (D. Utah May 19, 2006); *Orchard Hill Const. LLC v. Fed. Emerg. Mngmt.*, No. 99-5756, 2001 WL 185188, at *1 (N.D. Ill., Feb. 26, 2001) ("If an owner wishes to remove all or part of her property from an SFHA, she may request from FEMA a Letter of Map Revision. If the request is granted, the owner is no longer obligated to purchase flood insurance."). Until a LOMR is obtained to remove the flood plain designation, a property owner is required to purchase flood insurance. *See Doyle v. City of Marengo*, 783 N.E.2d 1052, 1053 (Ill. App. 2 Dist. 1999) ("Woodstone had not obtained letters of map revision for these properties to remove the flood plain designation from them. Because of this, plaintiffs were required to purchase flood insurance").

[7] Even though GMAC was still entitled to require flood insurance under the language of the Mortgage, FEMA's Guidelines, the National Flood Insurance Program ("NFIP"), and applicable case law, GMAC eliminated flood insurance for the Property effective as of the date of the LOMR. *See* Compl., ¶ 36 and Ex. G to Motion to Dismiss.

sued, the Alabama Supreme Court held that the mortgage language "such amounts and for such periods as may be required by the Mortgagee" gave the defendant the discretion to require insurance even where the prior lender did not do so. *Custer*, 858 So.2d at 246. As these cases make clear, GMAC is not bound by the original lender's failure to require insurance.[8]

Plaintiff is also wrong when he alternatively argues that GMAC was only permitted to require insurance so as to protect its rights and interests, which according to Plaintiff is limited solely to the principal balance of the loan. First, nothing in the Mortgage, including the language cited by Plaintiff, limits the lender's "rights" to the "principal balance." Further, GMAC's rights and interests go beyond the principal balance owed. For instance, GMAC has interests in: (a) the expectation to receive future loan interest payments, (b) avoiding costs that can arise from underinsured properties, *e.g.*, deductibles, costs of disputes over coverage, costs of disputes over allocation of insurance proceeds, *etc.*, and (c) keeping the Property in good repair. *See* Mortgage, p. 3, ¶ 5 ("insurance proceeds shall be applied to restoration or repair of the Property damaged"). And, while Plaintiff relies on the purported differences between paragraphs 5 and 7, a plain reading of those two paragraphs do not support his theory: simply because paragraph 7 includes both "value of property" and "Lender's rights" does not mean that those phrases are mutually exclusive and that GMAC could never require insurance coverage that equals "value of property." Nothing in the Mortgage even suggests that they are and Plaintiff has not cited to a single case in support.

---

[8] *Pailes v. HSBC Mortg. Servs.*, No. 10-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011), adds nothing to this Court's analysis. Unlike the cases relied upon by GMAC – where the court actually examined similar mortgage language – there is no indication in *Pailes* that the court even considered the mortgage language. Indeed, the court does not even mention the terms of the mortgage.

Moreover, Plaintiff's flawed reading of the Mortgage is contradicted by FEMA's guidelines, industry practice, the position of multiple regulatory agencies, and case law directly on point. For instance, FEMA's guidelines make clear that, in accordance with industry practice, lenders should not limit the required insurance coverage to the principal balance of the loan, but instead should use the replacement value of the property. *See* FEMA Guidelines, pp. 27-28 ("A sound flood insurance risk management approach follows the insurance industry practice of insuring building to full [replacement costs value (RCV)] .... By insuring the buildings to the full RCV, the lender and borrower are both better protected."). FEMA further explains that insurance which covers only loan balance provides no funds for a borrower to rebuild, and often leaves insufficient funds such that both borrower and lender are harmed. *Id.* Similarly, the Office of the Comptroller of the Currency, Treasury (OCC); Board of Governors of the Federal Reserve System (Board); Federal Deposit Insurance Corporation (FDIC); Farm Credit Administration (FCA); and National Credit Union Administration (NCUA) all take the position that lenders should require insurance sufficient to cover full replacement value as opposed to just the principal balance. 76 Fed. Reg. 64,175, 64,182 (Oct. 17, 2011).

Given this, it is not surprising that a number of Courts have held that the same or virtually identical mortgage language does ***not*** limit a lender to the principal balance, and that requiring flood insurance coverage equal to the full replacement value of the property is not unreasonable. *See, e.g., Custer*, 858 So.2d at 246; *Kolbe*, 2011 WL 3665394 at *5 (dismissing breach of good

faith and fair dealing claim because "requiring flood insurance coverage equal to full replacement value of the property was not unreasonable").[9]

Even Plaintiff's cases do not support his theory. For instance, *Lloyds Underwriters v. Netterstrom*, 17 So.3d 732 (Fla. App. 2009), and the cases cited therein do not save Plaintiff's claims because they deal with conflicting contractual language and there are no such conflicts here. Moreover, the cases that Plaintiff cites regarding "concepts of insurance law" are similarly unhelpful. *See* Pl. Opp. at 21. Those cases merely stand for the unremarkable point that, in the event of a loss, the mortgagee cannot recover insurance proceeds in excess of the debt owed. GMAC does not dispute this point, and the mortgage itself expressly provides for the disbursement of insurance proceeds, including for the lender to use such proceeds to repair or restore the property. *See* Mortg., p. 3, ¶ 5. Plaintiff errs in equating a borrower's "debt" to "unpaid principal balance." Tellingly, none of Plaintiff's cited cases support his leap in logic. Indeed, Plaintiff's lead case, *In re Newby*, 344 B.R. 597 (Bkrtcy. W.D. Mo. 2006), actually makes clear that "debt" encompasses more than just "principal balance," and that a mortgagee may have an interest in insurance proceeds greater than the unpaid principal balance. *In re Newby*, 344 B.R. 597 (awarding the mortgage interest on the principal plus other interest, fees, and charges.) Accordingly, Plaintiff's cases are unhelpful and actually cut against his theory.[10]

---

[9] Plaintiff's distinction of *Lass* and *Kolbe* based on the incorrect assertion that the Property in this case was not in the SFHA at closing is completely belied by the Original Flood Certification showing that it was. *See* **Ex. K**.

[10] In *Wulf v. Bank of America, N.A.*, 798 F. Supp. 586 (E.D. Pa. 2011), Judge McLaughlin wrote separately and noted that Plaintiff's position seemed "incongruous" if the mortgage limited the amount of insurance while FEMA recommends full replacement value. Although Judge McLaughlin was reluctant to make a conclusive decision on the motion to dismiss because the record did not include FEMA's Guidelines, both parties here have put the Guidelines in the record. As such, this Court should pick up where Judge McLaughlin left off and dismiss the claim.

By using replacement value, GMAC was acting in accordance with FEMA Guidelines, multiple regulatory agencies, industry norms, and applicable case law. Moreover, GMAC notified Plaintiff's Predecessors in Interest weeks before placing insurance that they needed to maintain coverage on the Property, and that they could obtain coverage more cheaply than GMAC could. GMAC also gave them every opportunity to purchase coverage on their own and provided them with information on how to petition FEMA to remove the Property from the SFHA (which is exactly what Plaintiff did in 2010).[11] Indeed, GMAC provided these notices every year.[12]

The cases that Plaintiff cites on the duty of good faith do not save the contract claim. First, Plaintiff's reliance on *Shibata v. Lim*, 133 F. Supp. 2d 1311 (M.D. Fla. 2000), is curious since that case actually supports dismissal here. In that case, the court dismissed the good faith and fair dealing-based claim, because "[a] cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract." *Id.* As to *Sepe v. City of Safety Harbor*, 761 So. 2d 1181 (Fla. Dist. Ct. App. 2000), the court actually held that "unless no reasonable party in the position of the [defendant] would have made the same discretionary

---

[11] These additional steps distinguish this situation from that in *Abels v. JP Morgan Chase Bank, N.A.*, 679 F. Supp. 2d 1273 (S.D. Fla. 2009).

[12] Ironically, if GMAC took a less conservative approach it could open itself to possible civil penalties under the NFIA. *See* 42 U.S.C. § 4012a(f). Similarly, GMAC could also expose itself to lawsuits by borrowers who argue that GMAC should have purchased insurance in excess of the principal balance. *See, e.g., Nicholson v. Countrywide Home Loans*, No. 107-cv-03288, 2008 WL 731032, at *3 (N.D. Ohio Jan. 7, 2008) (asserting negligence claims against lender for, *inter alia*, "failing to require that the mortgagor purchase the required insurance or to 'force-place' it pursuant to the terms of the NFIA."); *Doss v. Cuevas*, 985 So. 2d 740, 742 (La. App. 1st Cir. 2008) (same). *See also* FEMA Guidelines, p. 11 ("Section 42 of U.S.C. §4012a sets the ultimate responsibility to place flood insurance on the applicable lender").

decision the [defendant] made, it seems unlikely that its decision would violate the covenant of good faith in this context." GMAC's actions were not only reasonable, they were in accordance with FEMA's guidelines, multiple regulatory agencies, and industry norms. Moreover, *Hofstetter v. Chase Home Fin., LLC*, 751 F. Supp. 2d 1116 (N.D. Cal. 2011), did not even involve a claim for breach of contract. Finally, *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011), and *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011), are not helpful because they only decided the issue of whether the correct party was sued for breach of contract and offer no assistance as to whether the facts alleged in this case are legally sufficient.[13] For these reasons, Plaintiff's contract claim fails.

### E. The TILA Claim Still Fails

Plaintiff does not dispute that he filed the Complaint: (i) almost 14 years after his parents closed the loan, (ii) more than 9 years after GMAC first sent a notice and placed insurance, (iii) more than 3 years after GMAC changed the coverage requirement to replacement value, (iv) more than 3 years after the death of his mother, (v) more than 2 years after he started disputing the flood insurance requirement, (vi) more than 1 year after the LOMR removing flood insurance, and (vii) more than 1 year after he modified the loan. Under any measure, any TILA damages claim is barred by the applicable one-year statute of limitations.

Plaintiff's argument about equitable tolling is neither plausible nor supported by the allegations in the Complaint. Equitable tolling is only appropriate in the following

---

[13] Plaintiff also premises GMAC's alleged bad faith on GMAC's alleged knowledge that the Original Flood Certificate did not require insurance. Pl. Opp. at 28. Given that the Original Flood Certificate in fact certified the Property as being in a SFHA, this argument should be rejected outright.

circumstances: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). Plaintiff does not allege that any of these three situations apply here. In addition, because Plaintiff relies on the same allegations that constitute the alleged TILA violation for his tolling argument, there can be no equitable tolling as a matter of law. *See Grinke v. Countrywide Home Loans, Inc.*, No. 08-23382, 2009 WL 2588746, at *2 (S.D. Fla. Aug. 24, 2009) ("if failure to make TILA disclosures also tolled the limitations period for pursuing TILA claims, then the statute of limitations would be rendered meaningless because those non-disclosures are the very essence of the TILA violation in the first place."). *See also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899 (9th Cir. 2003) (equitable tolling inapplicable to TILA because plaintiff possessed all loan documents and allege no actions that prevented discovery). Here, Plaintiff and his Predecessors in Interest knew about the lender-placed insurance years before he filed the Complaint. Indeed, Plaintiff concedes his Predecessors in Interest had copies of the Mortgage and Notices which serve as the basis for his claims in the Complaint. Accordingly, equitable tolling does not apply here and the TILA claim barred.

Further, Plaintiff has failed to establish any TILA violation in the first place. Under TILA, "creditor" and "consumer" are specifically defined terms, *see* 15 U.S.C. §1602, and Plaintiff cannot plausibly allege that either GMAC or he fell within these definitions. Instead of addressing this, Plaintiff relies solely on the fact that GMAC is the "lender" and that his Predecessor in Interest were the "borrowers" under the Mortgage. However, this does not mean that they were "creditors" and "consumers" as those terms of art are defined by TILA. Even if

Plaintiff and GMAC fell within these definitions, however, GMAC still did not have any disclosure requirements: the Official Staff Interpretation to Regulation Z – which Plaintiff ignores – explicitly provides in the context of force-placed insurance that new TILA disclosures are only required after closing in three specific instances: refinances, loan assumptions, or variable rate changes. 12 C.F.R. Part 226, Supp. I, § 17(e). None of these situations are alleged here and Plaintiff does not argue otherwise. Plaintiff also ignores *Adams v. GMAC Mortg. Corp. of Pa.*, No. 94-3233, 1994 WL 702639 (N.D. Ill. Dec. 14, 1994), and *Pauley v. Bank One Colorado Corp.*, 205 B.R. 272 275-76 (D. Colo. 1997), both of which dismissed a TILA claim because the loan agreement made clear that the lender could place insurance and that the insurance was not considered by Regulation Z to be part of the finance charge.[14] Accordingly, Plaintiff's TILA claim also fails as GMAC had no duty to provide post-closing disclosures related the force-placed insurance.

## F. The Conversion Claim Still Fails

Relying on two cases that do not even involve a conversion claim, Plaintiff contends that "the economic loss rule does 'not prevent the bringing of an action and recovery for intentional

---

[14] Plaintiff's discussion of parts of Magistrate Judge Hey's Recommendation in *Wulf* fails to recognize that those parts were not actually adopted by McLaughlin in her separate opinion. In any event, Judge Hey's Recommendation, is distinguishable because the TILA claim turned on her finding that the underlying agreement allowed for "hazard" insurance but may have not allow for "flood" insurance. *Wulf*, 798 F. Supp. at 599. The Mortgage here explicitly allows for flood insurance. In addition, *Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002), is not helpful because the court only held that the *original* TILA disclosures from closing cannot be misleading and that there would only be a TILA violation if the underlying agreement did not allow for the fee at issue. Indeed, *Rossman* has been repeatedly distinguished because it only deals with open-end credit. *See, e.g., Porter v. Nationscredit Cons. Discount Co.*, No. 03-03768, 2007 WL 30117 (E.D. Pa. Jan. 3, 2007); *Bowmer v. NovaStar Mortg. Funding Trust, Series 2006-1*, 711 F. Supp. 2d 390, 397 (E.D. Pa. 2010). Similarly, *Hofstetter*, 2010 WL 4606478 is distinguishable for this same reason. *See Lass v. Bank of America, N.A.*, No. 11-10570, 2011 WL 3567280, at *3 (D. Mass. Aug. 11, 2011) (distinguishing *Hofstetter*).

torts, such as . . . conversion[.]'" *See* Pl. Opp. at 35. In fact, this contention is only partially correct and is inapplicable here: "While intentional torts like conversion are not necessarily barred by the economic loss rule, when the conversion action is 'exactly coextensive with the nonperformance of an agreement between the parties,' such an action may not stand." *PNC Bank, N.A. v. Colonial Bank, N.A.*, No. 08-611, 2008 WL 2917639, at *3 (M.D. Fla. July 24, 2008) (quoting *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1569 (M.D. Fla. 2008)) (dismissing conversion claim as barred by the economic loss rule). Where the conversion "allegation[s] relate[] directly to the performance of the [a]greement" between the parties, the conversion claim is "'exactly coextensive' with [the alleged] breach of contract" and should therefore be dismissed. *Id.* (quoting *Future Tech Int'l*, 944 F. Supp. at 1569). In this case, Plaintiff's conversion allegations "relate[] directly to" and are "exactly coextensive with" GMAC's alleged breach of the Mortgage, thus necessitating dismissal. *Id.* None of the cases cited by Plaintiff compels a different result. Accordingly, Plaintiff's claim is barred by the economic loss doctrine. *See Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (applying Florida law) ("Neither an obligation to pay money nor a breach of contract generally gives rise to a claim of conversion in tort.").[15]

### G. The Unjust Enrichment Claim Still Fails

Plaintiff's principal argument is that his unjust enrichment claim should survive because he is entitled to plead in the alternative. Courts applying Florida law have concluded otherwise: "unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid." *Williams*, 2011 WL 4368980, at *11. Neither the

---

[15] Moreover, GMAC never exercised unauthorized dominion over *Plaintiff's* property – Plaintiff specifically agreed to the Assumption and Modification Agreement.

validity of the Mortgage nor the validity of the Assumption and Modification Agreement, both governed by Florida law, is contested by either party. Because of the undisputed existence of an express contract, Plaintiff's unjust enrichment claim is improper and should be dismissed.[16] Indeed, Plaintiff has now conceded that he made no payments to GMAC on account of flood insurance other than what he might have paid pursuant to he Assumption and Modification Agreement and he has not argued that he wants to rescind that contract.

Moreover, GMAC cautioned Plaintiff's Predecessors in Interest weeks prior to placing insurance that they must maintain coverage on the Property and that they would be able to obtain less expensive coverage than GMAC could. GMAC even furnished them with information regarding petitioning FEMA to remove the Property from the SFHA so that the insurance would no longer be required, which Plaintiff later did. GMAC force-placed insurance in fulfillment of its statutory duties only after these warnings – and in subsequent years, similar warnings – went unheeded. As the *Lass* court has explained, these allegations do not equal inequity for the purposes of an unjust enrichment claim:

> The Court agrees with defendants that plaintiff's allegations do not establish a claim for unjust enrichment. [Defendant's] retention of a commission with respect to the purchase of insurance on plaintiff's behalf was not inequitable due to the undisputed fact that plaintiff received multiple notices that if she did not purchase the required insurance, it would be purchased for her and a fee might be assessed for that purchase. By failing to purchase the insurance on her own, plaintiff impliedly accepted the forced-placement of insurance, including any fee

---

[16] *See Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, No. 09-60089-CIV, 693 F. Supp. 2d 1325, 1348 (S.D. Fla. Feb. 1, 2010) ("As there is no dispute to whether there is an express contract in the instant case, the Court finds that the claim for unjust enrichment cannot stand."); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. Oct. 15, 2009) (dismissing unjust enrichment claim, *sua sponte*, due to existence of express contract). *See also JI-EE Indus. Co., Ltd. v. Paragon Metals, Inc.*, No. 09-81590, 2010 WL 1141103 at *1 (S.D. Fla. Mar. 23, 2010) ("There can be no unjust enrichment . . . claim when there is an express contract between the parties.") (dismissing unjust enrichment claim).

associated therewith. [Plaintiff's] claim for unjust enrichment will, therefore, be dismissed.

2011 WL 3567280 at *7.

Finally, Plaintiff's reliance on *Williams* is misplaced. In *Williams*, the mortgage servicer provided a third-party insurance company with access to its mortgage "database to find lapsed insurance policies." 2011 WL 4368980 at *1. After identifying a lapsed policy, the insurance company would issue a policy and "write[] to the homeowners to notify them of the force-placed coverage and charge[] [them] exorbitant rates[.]" *Id.* The *Williams* court specifically noted that homeowners in that case "ha[d] no way of refusing the force-placed charges." *Id.* The circumstances presented in *Williams* are a far cry from the allegations in this case. Because the facts alleged in this case are far more similar to those in *Lass* than those in *Williams*, the Court should otherwise dismiss Plaintiff's unjust enrichment claim.

### III. <u>CONCLUSION</u>

For the reasons set forth here and in GMAC's Opening Brief, the Court should dismiss the Complaint.

Respectfully submitted,

*/s/ Joe N. Nguyen*
Henry F. Reichner
Joe N. Nguyen
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone No. (215) 851-8100
Facsimile No. (215) 851-1420

*Attorneys for Defendant*
*GMAC Mortgage, LLC*